**DES MOINES REGISTER & TRIBUNE CO., Petitioner,**

v.

**IOWA DISTRICT COURT FOR STORY COUNTY, Respondent.**

No. 86–1810.

Supreme Court of Iowa.

June 15, 1988.

As Corrected June 28, 1988.

Kasey W. Kincaid and K.J. Walker, of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for petitioner.

Thomas J. Miller, Atty. Gen., Ann E. Brenden, Asst. Atty. Gen., and Mary E. Richards, County Atty., for respondent.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

On December 2, 1986, a house fire in Ames, Iowa, claimed the lives of two children. Following an investigation, Dale Eugene Royer was arrested and charged with arson in the first degree and two counts of murder in the first degree. The court scheduled a preliminary hearing for December 17, 1986. On December 16, the defense attorney requested that the preliminary hearing be closed pursuant to Iowa Rule of Criminal Procedure 2(4)(d). This rule provides:

> d. *Private hearing.* The magistrate must also, upon request of the defendant, exclude from the hearing all persons except the magistrate, the magistrate's clerk, the peace officer who has custody of the defendant, a court reporter, the attorney or attorneys representing the state, a peace officer selected by the attorney representing the state, the defendant and the defendant's counsel.

The Des Moines Register & Tribune Company (Register), learned of the closure request and filed a petition of intervention requesting the preliminary hearing be open to the public and press. A hearing on the closure request was held on December 17. Although no evidence was offered, defense counsel argued that Royer had a statutory right to a private preliminary hearing under the Iowa Rules of Criminal Procedure. He urged that Royer's right to a fair trial would be jeopardized if the preliminary hearing was open to the public and press because pretrial publicity of prejudicial evidence would harm the ability to find a fair jury. The state made no objection to the defendant's request for closure.

The district associate judge found that the public and press have a first amendment right to attend preliminary hearings; however, the judge closed the preliminary hearing to protect Royer's right to a fair trial. The Register immediately filed an application for writ of certiorari and stay with this court. We denied the Register's request for an order staying the preliminary hearing and the preliminary hearing was conducted on December 17 as scheduled.

At the conclusion of the closed preliminary hearing, the associate judge granted Royer's motion to seal the transcript and documents relating to the preliminary hearing. The next day, the Register filed an amended application for writ of certiorari and request for stay with this court. We granted the Register's amended application and stayed the order which sealed the records of the preliminary hearing. We did not stay prosecution of the criminal case, *State v. Royer.*

The Register challenges the legality of the district associate judge's order by its application for a writ of certiorari. Iowa Rule of Civil Procedure 306 states:

> A writ of certiorari shall only be granted ... where an inferior tribunal ... is alleged to have exceeded its ... proper jurisdiction or otherwise have acted illegally.

Illegality exists within the meaning of rule 306 when the findings on which the tribunal based its conclusions of law do not have substantial evidentiary support. *Fetters v. Degnan,* 250 N.W.2d 25, 27 (Iowa 1977). Illegality also exists when the tribunal does not apply the proper law. *Hightower v. Peterson,* 235 N.W.2d 313, 317 (Iowa 1975). Normally, our review by certiorari is at law, but where violations of basic constitutional safeguards are involved our review is de novo and we make our own evaluation of the record from the totality of the circumstances. *Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920, 922 (Iowa 1983).

■ Although our decision will have no effect on the criminal case, *State v. Royer,* we proceed to the merits in this proceeding because the issue raised is of public importance and the problem is likely to recur. *Wifvat,* 328 N.W.2d at 922.

This proceeding challenges the constitutionality of Iowa Rule of Criminal Procedure 2(4)(d). It demonstrates the tension between the right to a fair trial found in the sixth and fourteenth amendments and the implied right of access to criminal pro-

ceedings found in the first amendment.[1] The right to an open public trial is not solely in the possession of the accused, the public, or the press. Earlier jurisprudence characterized the constitutional guarantee of a public trial as "personal to the accused," and not available for exercise by the public. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 379, 99 S.Ct. 2898, 2905–06, 61 L.Ed.2d 608, 621 (1979). Recent cases have discarded that view and recognize the right to a public trial as a "shared right of the accused and the public," designed to open the criminal process to neutral observers in order to provide for fairness. *See Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 7, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1, 9 (1986). The right to an open trial reflects the purpose of the first amendment; "to guarantee all facets of each right described." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 n. 14, 100 S.Ct. 2814, 2828 n. 14, 65 L.Ed.2d 973, 990 n. 14 (1980) (plurality opinion). While pretrial publicity can reach a level which has a negative impact on the accused's right to an impartial jury, *see Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 552, 96 S.Ct. 2791, 2799, 49 L.Ed.2d 683, 693–94 (1976), the first amendment right of access serves to insure the fairness of the criminal justice system by providing for public scrutiny.

The constitutional standards for public access to certain phases of the criminal process have been defined by the United States Supreme Court. The Court has recognized that the first amendment implicitly guarantees the public a right to attend criminal trials. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 589, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973, 991–92 (1980) (plurality opinion). Prior to *Rich-*

*mond Newspapers*, however, the Court held that there was not a right of public access to grand jury proceedings. *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156, 164 (1979).

In 1982, the Supreme Court extended the implicit right of public access to criminal trials and struck down a Massachusetts statute providing for exclusion of the general public from trials of specified sexual offenses involving a victim under the age of eighteen. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 610–11, 102 S.Ct. 2613, 2622, 73 L.Ed.2d 248, 260 (1982). The Court recognized the possibility of a compelling interest to bar press and public access to criminal sex-offense trials during the testimony of minor victims, but held that there was no justification for a *mandatory* closure rule. The interests served by closure were to be considered on a case-by-case basis. *Id.* at 608, 102 S.Ct. at 2621, 73 L.Ed.2d at 258. In holding that the Massachusetts law violated the first amendment, the Court emphasized the important role that public scrutiny of the criminal justice process serves in our form of self-government. *Id.* at 606, 102 S.Ct. at 2619–20, 73 L.Ed.2d at 256.

At this point, the right of access to the criminal trial was well established. The focus of legal development now shifted to a determination of whether the right of access to a criminal trial created a right of access to other phases of the criminal process; such as pretrial hearings, jury selection proceedings, and bail reduction hearings.

In *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the Supreme Court articulated a sixth amendment right of public access to pretrial suppres-

---

1. Although our analysis is dominated by reference to the United States Constitution, the Iowa Constitution contains similar provisions. Article I, section 7 of the Iowa Constitution states in part:

No law shall be passed to restrain or abridge the liberty of speech, or of the press. Article I, section 10 of the Iowa Constitution states:

In all criminal prosecutions, and in cases involving the life, or liberty of an individual

the accused shall have a right to a speedy and public trial by an impartial jury. . . .

Because these state provisions are almost identical to the federal Constitution, this court has accepted interpretation of the federal Constitution as the proper interpretation of the Iowa Constitution as well. *See Iowa Freedom of Information Council v. Wifvat*, 328 N.W.2d 920, 924 (Iowa 1983) (state and federal Constitutions identical for purposes of determining public access to pretrial suppression hearings).

sion hearings. *See also Iowa Freedom of Information Counsel v. Wifvat*, 328 N.W. 2d 920, 924 (Iowa 1983) (Iowa recognized constitutional right of access to pretrial suppression hearing prior to *Waller*). That same year, the Court recognized a right of access to jury selection proceedings in a criminal trial. *See Press–Enterprise v. Superior Court*, 464 U.S. 501, 510, 104 S.Ct. 819, 822–24, 78 L.Ed.2d 629, 638 (1984) (*Press–Enterprise I*) ("[T]he primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the *voir dire* which promotes fairness."). The Court went on to state:

> The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can demonstrate whether the closure order was properly entered.

*Id.* at 510, 104 S.Ct. at 824, 78 L.Ed.2d at 638.

Other federal cases have recognized a right of public access to bail reduction hearings. *See United States v. Chagra*, 701 F.2d 354, 363–64 (5th Cir.1983); *see also In re Globe Newspapers Co.*, 729 F.2d 47, 51–52 (1st Cir.1984) (follows *Chagra* and holds that first amendment right of access attaches to bail proceedings); *Application of Herald Co.*, 734 F.2d 93, 99 (2nd Cir.1984) (favorably citing *Chagra*). In addition to bail reduction hearings, federal courts have recognized a qualified right of public access to other aspects of the criminal process. *See, e.g., United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988) (constitutional right of access to plea hearings and plea agreements); *In re New York Times Co.*, 828 F.2d 110, 114–15 (2d Cir.1987) (qualified right of access to written documents submitted in connection with judicial proceedings that implicate the right of access); *In re Washington Post*, 807 F.2d 383, 389 (4th Cir.1986) (qualified right of public access attaches to sentencing hearing); *United States v. Doherty*, 675 F.Supp. 719, 723 (D.Mass.1987) (public

has a qualified constitutional right, at some reasonable time after a verdict is delivered, to post-verdict interviews of jurors in criminal case).

■ The recent Supreme Court case of *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*), held that a qualified right of public access attaches to preliminary hearings as they are conducted in California. *Id.* at 13, 106 S.Ct. at 2743, 92 L.Ed.2d at 13. In making that determination, the Court articulated a two-part test to utilize in determining if a constitutional right of public access applies to a certain criminal proceeding. First, the court must consider whether the place and process have historically been open to the press and general public. Second, the court must consider whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* at 8–9, 106 S.Ct. at 2740–41, 92 L.Ed.2d at 10. To resolve the conflict in this case, we will apply the standards articulated in *Press–Enterprise II*.

The holding of *Press–Enterprise II* was limited to preliminary hearings as they are conducted in California. *See Press–Enterprise II*, 478 U.S. at 13, 106 S.Ct. at 2743, 92 L.Ed.2d at 13. At this point in our analysis, it will be necessary to compare the preliminary hearings in Iowa and California.

In California, the preliminary hearing can serve as a means of obtaining an indictment. *Hawkins v. Superior Court*, 22 Cal.3d 584, 150 Cal.Rptr. 435, 437, 586 P.2d 916, 918 (1978). In Iowa, the function of a preliminary hearing is to determine whether probable cause exists to hold the accused for trial. *State v. Washington*, 160 N.W.2d 337, 339 (Iowa 1968); *State v. Franklin*, 163 N.W.2d 437, 439 (Iowa 1968) ("[A] preliminary hearing relates only to legality of detention of one accused of a felony or indictable misdemeanor before he has been charged by either information or indictment."). In California, the accused has an absolute right to a preliminary hearing, even if the accused has been indicted

by a grand jury. *Hawkins v. Superior Court*, 22 Cal.3d at 594, 150 Cal.Rptr. at 441, 586 P.2d at 922. In Iowa, the accused does not have an absolute right to a preliminary hearing. The accused is not entitled to a preliminary hearing if a grand jury indictment or a trial information is filed before the preliminary hearing date. Iowa R.Crim.P. 2(4)(a); *State v. Rouse*, 290 N.W. 2d 911, 912–13 (Iowa 1980). In California, the accused has the right to exclude illegally obtained evidence, *see* Cal. Penal Code Ann. §§ 859–66 (West 1985), § 1538.5 (1982), however, the Iowa Rules of Criminal Procedure prevent the accused from suppressing illegally obtained evidence at the preliminary hearing. Iowa R.Crim.P. 2(4)(c).

Despite these differences, there are similarities between preliminary hearings in Iowa and California. In both states the accused may introduce evidence and cross-examine witnesses. Cal. Penal Code Ann. §§ 859–66, 1538.5 (West 1985); Iowa R.Crim.P. 2(4)(b). Neither preliminary hearing can result in a conviction and each is before a judicial officer without a jury. With this comparison as background we now address the first step of the *Press–Enterprise II* test.

In considering whether there was a tradition of openness in the California preliminary hearing, the *Press–Enterprise II* Court did not limit their analysis to California law. Their analysis was broad enough to include preliminary hearings of federal and state jurisdictions. *See Press–Enterprise II*, 478 U.S. at 10–12, 106 S.Ct. at 2741–42, 92 L.Ed.2d at 11–12. In their discussion, the Court cited *Iowa Freedom of Information Council v. Wifvat*, 328 N.W.2d 920 (Iowa 1983), as support for the proposition that preliminary hearings in

Iowa are presumptively open. *See Press–Enterprise II*, 478 U.S. 10–11, 106 S.Ct. at 2741–42 nn. 3 & 4, 92 L.Ed.2d at 11–12 nn. 3 & 4.

Examination of other states with preliminary hearings similar to those in Iowa reveals a trend toward presumptively open preliminary hearings. Iowa follows the original New York Field Code of Criminal Procedure, which provides that preliminary hearings will be closed on the request of the accused. *See* Iowa R.Crim.P. 2(4)(d). In North Dakota, another Field Code state, the public is entitled to access to preliminary examinations or to reasonable notice and an opportunity to be heard on motions to close preliminary hearings. *See Minot Daily News v. Holum*, 380 N.W.2d 347, 349 (N.D.1986). Another Field Code state, Utah, acknowledged a constitutional right of access to preliminary hearings two years before the decision of *Press–Enterprise II*. *See Kearns–Tribune Corp. v. Lewis*, 685 P.2d 515, 521 (Utah 1984); *see also Phoenix Newspapers, Inc. v. Superior Court*, 101 Ariz. 257, 418 P.2d 594 (1966) (Field Code state requiring full disclosure of pretrial proceedings).

It is difficult to say with certainty whether there is a tradition of openness surrounding the Iowa preliminary hearing. However, the broad considerations of the *Press–Enterprise II* opinion, as well as the presumption of openness in other Field Code states, persuades us the first element of the *Press–Enterprise II* test is satisfied.[2]

Our next consideration is whether public access plays a particularly significant positive role in the actual functioning of Iowa's preliminary hearing. In this step of analysis, the *Press–Enterprise II* Court analyzed the specific procedural aspects of Cal-

---

**2.** Our treatment of the historical element of the *Press–Enterprise II* test is consistent with several federal decisions. In *United States v. Chagra*, 701 F.2d 354, 362–63 (5th Cir.1983) the Fifth Circuit was faced with an unclear history of public openness regarding bail reduction hearings. They stated, "Access to bail reduction hearings, however, should not be foreclosed because these proceedings lack the history of openness relied upon by the *Richmond Newspapers* Court." *Id.* The Ninth Circuit, in *Seattle*

*Times Co. v. United States Dist. Court*, 845 F.2d 1513, 1516–17 (9th Cir.1988), gave summary treatment to the historical aspect of the *Press–Enterprise II* test and held that a qualified right of access attaches to pretrial detention hearings. *Id.; see also United States v. Doherty*, 675 F.Supp. 719, 722 (D.Mass.1987) ("While the history of post-verdict interviews appears scant, the broad latitude afforded the press in gathering news, especially in recent years, tends to favor accessability in this areas as well.").

ifornia's preliminary hearing. Because of the similarities between the preliminary hearing and trial in California, as well as the importance of the preliminary hearing in California, the Court held that public access played a significant positive role in the function of California's preliminary hearing. *See Press–Enterprise II,* 478 U.S. at 14, 106 S.Ct. at 2743, 92 L.Ed.2d at 13. After analyzing the differences between the Iowa and California preliminary hearing, as well as the standards of other states with preliminary hearings similar to Iowa's, we hold that public access to preliminary hearings in Iowa plays a significant positive role in the functioning of the criminal justice system.

As noted earlier, there are differences between the Iowa and California preliminary hearing. In Iowa, an accused may not suppress evidence. The significance of this difference is weakened by the qualified right of public access to suppression hearings in Iowa. *See Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920 (Iowa 1983).

Another difference between the Iowa and California procedure is the purpose of the preliminary hearing. The purpose of Iowa's preliminary hearing is not to obtain an indictment, but rather to determine if there is probable cause to justify holding an accused. *See State v. Franklin,* 163 N.W.2d 437, 439 (Iowa 1968). This difference is weakened by federal cases which acknowledged a public right of access to bail reduction and pretrial detention hearings, which serve a function more similar to Iowa's preliminary hearing than to California's. *See Seattle Times Co. v. United States Dist. Court,* 845 F.2d 1513, 1516–17 (9th Cir.1988); *United States v. Chagra,* 701 F.2d 354, 363–64 (5th Cir.1983).

The similarities between the Iowa and California preliminary hearing deserve consideration. While the Iowa hearing is not as elaborate a trial procedure as the California hearing, both hearings provide the accused the opportunity to introduce evidence and cross-examine witnesses before a neutral judicial officer. *See* Cal. Penal Code Ann. §§ 859–66, 1538.5 (West 1985);

Iowa Rules Crim.P. 2(4)(b). The absence of a jury was a very significant factor in the *Press–Enterprise II* Court's evaluation of the California preliminary hearing. *See Press–Enterprise II,* 478 U.S. at 12–13, 106 S.Ct. at 2743, 92 L.Ed.2d at 13.

Similarly, the absence of a jury, long recognized as "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge," *Duncan v. Louisiana,* 391 U.S. 145, 156, 88 S.Ct. 1444, 1451, 20 L.Ed.2d 491 (1968), makes the importance of public access to a preliminary hearing even more significant.

Finally, public access to preliminary hearings in Iowa would serve to enhance what the Supreme Court has characterized as the "community therapeutic value" of openness. *See id.* at 13, 106 S.Ct. at 2743, 92 L.Ed.2d at 13. "Community therapeutic value" describes the positive impact that public access has on public confidence in the criminal justice system. Public access to the preliminary hearing will tend to operate as a curb on prosecutorial and judicial misconduct and will further the public's interest in understanding the criminal justice system. We hold that both elements of the *Press–Enterprise II* test are satisfied and that a qualified right of public access attaches to preliminary hearings as they are conducted in Iowa.

This holding is supported by the liberal extension of the right of public access to other nontrial phases of the criminal process by federal courts. It is also consistent with similar holdings from other state jurisdictions. *See, e.g., Star Journal Publishing Corp. v. County Court,* 197 Colo. 234, 591 P.2d 1028 (1979); *Minneapolis Star & Tribune Co. v. Kammeyer,* 341 N.W.2d 550 (Minn.1983); *State v. Williams,* 93 N.J. 39, 459 A.2d 641 (1983); *Petition of Daily Item,* 310 Pa.Super.Ct. 222, 456 A.2d 580 (1983); *Kearns–Tribune Corp. v. Lewis,* 685 P.2d 515 (Utah 1984); *State v. Circuit Court for Manitowoc County,* 141 Wis.2d 239, 414 N.W.2d 832 (1987).

Because a qualified right of access attaches to a preliminary hearing, the proceedings cannot be closed unless specific

**148**

findings are made on the record "demonstrating that 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" *Press–Enterprise II*, 478 U.S. at 13–14, 106 S.Ct. at 2743, 92 L.Ed.2d at 13 (quoting *Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 819, 78 L.Ed.2d at 629.) The *Press–Enterprise II* Court went on to adopt the following test:

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if *specific findings* are made demonstrating that first, *there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent* and, second, *reasonable alternatives to closure cannot adequately protect the defendant's free trial rights.*

*Press–Enterprise II*, 478 U.S. at 14, 106 S.Ct. at 2743, 92 L.Ed.2d at 13 (emphasis added).

In this case there were no specific findings in support of closure. The record reflects that there was no specific evidence submitted concerning prejudicial effects or alternatives to closure. We hold that the district associate judge erred in granting the closure motion without making specific findings as outlined in *Press–Enterprise II*, but we do not return the case to the district court.

Iowa Rule of Criminal Procedure 2(4)(d) requires the preliminary hearing to be closed upon request of the defendant. This violates the implicit first amendment rights of the public and press. It is therefore unconstitutional.

WRIT SUSTAINED.