Ayrlahn H. JOHNSON, Appellant,

v.

Don C. NICKERSON, Paul H. Rosenberg and The Des Moines Register and Tribune Company, Appellees.

No. 93–1703.

Supreme Court of Iowa.

Jan. 17, 1996.

Ayrlahn H. Johnson, Savage, Minnesota, pro se.

Randy Duncan and Scott Duncan of Duncan, Green, Brown, Langeness & Eckley, Des Moines, for appellees Don C. Nickerson and Paul H. Rosenberg.

Kasey W. Kincaid and Michael A. Giudicessi of Faegre & Benson, Des Moines, for appellee Des Moines Register and Tribune Co.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This tort suit was brought by a former jury foreman against a criminal defendant's counsel for their conduct in filing posttrial motions and against a newspaper for publishing a story concerning the attorneys' efforts. The trial court granted summary judgment in favor of the newspaper. A jury found in favor of defendant lawyers. We affirm.

John Albert Knox Jr., an African–American man, was accused of raping and murdering a Caucasian woman in 1987. We affirmed Knox's murder conviction. *State v. Knox,* 464 N.W.2d 445 (Iowa 1990). Knox's attorneys, Donald Nickerson and Paul Rosenberg, because of the racial overtones in the State's case, were concerned about whether Knox could receive a fair trial. With the court's permission they accordingly conducted extensive voir dire interviews in chambers during which they explored racial biases of potential jurors, including the plaintiff in the present case. Johnson was selected to serve as foreman of the jury.

Following Knox's conviction Nickerson and Rosenberg received disturbing information. A concerned citizen, alerted by television interviews with Johnson concerning the verdict, called Nickerson and Rosenberg. The citizen stated that on several occasions Johnson had solicited him to join "Posse Comitatus," described in the record as a white supremacist group. The citizen said Johnson had made derogatory comments about blacks and Jews in his presence and advocated the violent overthrow of the government.

Nickerson and Rosenberg promptly hired a private investigator to look into the matter. In order to begin the investigation the investigator requested Johnson's social security number and date of birth. Nickerson and Rosenberg solicited this information from the Polk County jury clerk.

The clerk provided the attorneys with a computer printout listing of the jurors' names, addresses, and a column of numbers labeled "SSN," an indication of social security numbers. When Nickerson and Rosenberg provided the investigator with the number listed for Johnson in this column, the investigator told them the digit was not a social security number. This led Nickerson and Rosenberg to conclude Johnson had used a false social security number when he registered for jury duty. The number was actually a juror number assigned to Johnson after he was selected for jury duty from voter registration records.

Based on this information [1] Nickerson and Rosenberg filed a motion for a new trial on January 4, 1989, alleging juror misconduct. On the same day the motion was filed, the defendant newspaper Des Moines Register, published an article detailing the motion, the allegations made against Johnson, and his denial.[2] A second article was published on January 26, 1989, recounting the story. The motion for a new trial was ultimately denied. Johnson thereafter filed this defamation and libel suit against Nickerson, Rosenberg, and the Des Moines Register.

Johnson and the Des Moines Register filed cross-motions for summary judgment. The court found the allegations of the petition constituted a matter of public concern so that a showing of actual malice was necessary for entitlement to punitive damages. The court then concluded, because the record did not demonstrate actual malice on the part of the Des Moines Register, Johnson was not entitled to punitive damages. The court went on to find that Johnson failed to produce the requisite evidence necessary to support his claim for actual damages, maintaining he could not simply rest on his original pleadings which stated he suffered an injured reputation and earning capacity. Summary judgment was therefore granted in favor of the Des Moines Register.

1. The investigator also reported several other things. It was discovered that Johnson had been involved in litigation with the government in which he was charged with avoiding federal income tax. It was also learned that the title registration for Johnson's minivan and several investments were held in the name of the "Israelite Covenant Church," a nonexistent church.

 In addition to the investigator's report, Nickerson also visited with a member of Prairie Fire, an agricultural "watchdog" group. The member was familiar with white supremacist organizations in rural Iowa and informed Nickerson that persons affiliated with them often attempted to avoid payment of income taxes. The member also indicated the name "Israelite Covenant Church" was linked to the Christian identity movement. This movement was said to have been adopted by white supremacist groups such as the Posse Comitatus.

2. Nickerson and Rosenberg mailed the motion to the Marshall County clerk of court on January 3, and provided the Des Moines Register with an advanced copy. The motion was filed in the morning of January 4, the same day the article was published.

The case against Nickerson and Rosenberg proceeded to trial. Johnson dismissed all defamation counts based on allegations that he held racist beliefs, maintaining only the libel count grounded in the "false" social security number. The district court allowed the defense to present evidence of Johnson's racist attitudes, finding it relevant to the issues of malice and damages. This evidence included a sworn statement by a witness who died prior to trial (that was read into evidence), and testimony in an effort to show that Johnson's actions were consistent with those of someone who subscribes to white supremacist philosophies.

The jury reached a verdict in favor of defendants Nickerson and Rosenberg. Johnson appeals both the dismissal of his suit against the newspaper and from the adverse judgment based on the jury verdict.

■ I. The scope of our review on Johnson's appeal from the grant of summary judgment in favor of the defendant newspaper is on error. Iowa R.App.P. 4; *Lihs v. Lihs*, 504 N.W.2d 890, 892 (Iowa 1993). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Lihs*, 504 N.W.2d at 892. Our task is to determine whether a genuine issue of fact exists and whether the law was correctly applied. *Lihs*, 504 N.W.2d at 892.

■ Defamation is an invasion of the interest in reputation and good name. It consists of a complex set of rules developed over a period of centuries in the common-law courts of England and later refined in the state court systems of America. *See* Note, *Iowa Libel Law and the First Amendment: Defamation Displaced*, 62 Iowa L.Rev. 1067, 1068 (1977). Defamation is made up of the twin torts of libel and slander—the former being written and the latter being oral. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 111, at 771 (5th ed. 1984). Of particular concern here, libel has been defined as the "malicious publication, expressed either in printing or in writing, or by signs or pictures, tending to injure the reputation of another person or to expose [that person] to public hatred, contempt, or ridi-

cule or to injure [the person] in the maintenance of [a] business." *Plendl v. Beuttler*, 253 Iowa 259, 262, 111 N.W.2d 669, 670–71 (1961). Thus to establish a prima facie case of libel the plaintiff must show the defendant (1) published a statement that (2) was defamatory (3) of and concerning the plaintiff, and (4) resulted in injury to the plaintiff. Under the traditional rule, malice is not an element of libel and will be presumed from the publication unless privilege is pleaded. 62 Iowa L.Rev. at 1068 n. 10.

■ There are traditionally two types of libel: libel per se and libel per quod. A statement is libelous per se if it has "a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse." *Prewitt v. Wilson*, 128 Iowa 198, 202, 103 N.W. 365, 367 (1905). A statement is libelous per quod if it is necessary to refer to facts or circumstances beyond the words actually used to establish the defamation. 50 Am.Jur.2d *Libel and Slander* § 146 (1995). If a statement is libelous per quod, the plaintiff is required to prove damages. *Id.* On the other hand, all the elements of proof are presumed to exist for statements that are libelous per se (based on the very nature of the language used). *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968); *Kluender v. Semann*, 203 Iowa 68, 70, 212 N.W. 326, 327 (1927).

A series of United States Supreme Court decisions has reshaped the law of defamation as it relates to suits against the news media. Beginning with *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the court for the first time afforded first amendment protection to defamation concerning the official conduct of a public official. The court held a public official may not recover damages for a defamatory falsehood relating to his or her official conduct without first proving the statement was made with actual malice. 376 U.S. at 279, 84 S.Ct. at 725–26, 11 L.Ed.2d at 706. Actual malice was defined as knowledge or reckless disregard of whether a statement was false. *Id.* On the heels of *New York Times*, a plurality

of the court extended actual malice protection to "all discussion and communication involving matters of public or general concern, without regard to whether the persons involved are famous or anonymous." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 43–44, 91 S.Ct. 1811, 1819, 29 L.Ed.2d 296, 312 (1971) (plurality).

 The court retreated, however, from the *Rosenbloom* standard in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Instead the court prescribed two levels of protection. Speech concerning public officials and public figures was still protected by the actual malice requirement. For speech concerning private parties, however, the states were free to interpret their own law and apply any level of protection below strict liability. *Id.* at 346–47, 94 S.Ct. at 3010, 41 L.Ed.2d at 809. Actual damages can no longer be recovered against a media defendant under a strict liability standard. Hence, in cases against a media defendant, the distinction between libel and libel per se has become irrelevant. *Id.* at 347 n. 10, 94 S.Ct. at 3010 n. 10, 41 L.Ed.2d at 809 n. 10.

 We had occasion to determine the standard of proof for a private figure plaintiff seeking damages for libel from a media defendant in *Jones v. Palmer Communications, Inc.*, 440 N.W.2d 884 (Iowa 1989). We held a private plaintiff must establish by a preponderance of the evidence that the media defendant negligently breached a professional standard of care in order to recover actual damages. *Id.* at 898. Regarding punitive damages, however, we found a showing of actual malice is required when the defamatory statements involve a matter of public concern. *Id.* at 900 (citing *Bagley v. Iowa Beef Processors, Inc.*, 797 F.2d 632, 644 (8th Cir.1986)). This distinction was justified by the "different levels of state interest in compensating a private plaintiff's actual damages caused by a defamatory statement and exact-

ing presumed or punitive damages from a defendant commenting on issues of public concern." *Jones*, 440 N.W.2d at 900; *see also Gertz*, 418 U.S. at 349, 94 S.Ct. at 3011, 41 L.Ed.2d at 810 (stating the state's interest "extends no further than compensation for actual injury").

In sum, to establish a prima facie defamation action against a media defendant, a private figure plaintiff must prove (1) publication (2) of a defamatory statement[3] (3) concerning the plaintiff (4) in negligent breach of the professional standard of care (5) that resulted in demonstrable injury. Such a showing entitles the plaintiff to damages unless the defendant can claim a recognized privilege.[4] In addition, if the incident involves a matter of public concern, the plaintiff must prove actual malice to recover punitive damages.

Applying these principles to the present case, the district court found Johnson did not meet his burden of proof and we agree. Assuming without deciding that Johnson was a private figure, it is dispositive that he did not sufficiently establish he was entitled to any damages.

 II. Addressing first the issue of punitive damages, it is apparent that the present case involves a matter of public concern. A public concern encompasses those controversies raising issues that might reasonably be expected to have an impact beyond the parties directly enmeshed in the particular controversy. *Jones*, 440 N.W.2d at 900 (quoting *Bagley*, 797 F.2d at 645). Simple newsworthiness alone does not generate such a concern. *Bagley*, 797 F.2d at 645; *Jones*, 440 N.W.2d at 900. Moreover purely private disputes such as a lawsuit in which the impact is limited primarily to the parties involved, even though perhaps of interest to the public, are insufficient to create a matter of public concern. *Bagley*, 797 F.2d at 645.

---

3. Both public officials and private individuals must prove the falsity of the challenged statements. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775–76, 106 S.Ct. 1558, 1563–64, 89 L.Ed.2d 783, 792 (1986).

4. Privilege can either be absolute (completely insulating the defendant from liability), or qualified (which requires a showing of actual malice to recover damages). *See Asay v. Hallmark Cards*, 594 F.2d 692, 697 n. 4 (8th Cir.1979); *Vinson v. Linn–Mar Community Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984).

A distinction exists when the subject matter involves the operation of the criminal justice system. Criminal prosecutions and judicial proceedings in criminal cases "are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government." *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 1045, 43 L.Ed.2d 328, 348 (1975). Public access to criminal proceedings operates as a curb on judicial misconduct and furthers the public's interest in understanding the criminal justice system. *See Des Moines Register & Tribune Co. v. District Court,* 426 N.W.2d 142, 147 (Iowa 1988). In particular, public confidence in the criminal justice system is of therapeutic value to the community. *Id.* The public has an interest in insuring the laws of the state are properly enforced. As the district court noted, the notion that prejudice may have played a part in a jury verdict involving a minority defendant directly impacts the sense of justice in the legal process. We conclude the present case involves a matter of public concern. Even if Johnson had dismissed the counts addressed to reports of his racial beliefs and proceeded solely on the false social security number claim, as he did in his case against Nickerson and Rosenberg, it would not remove the matter from public concern. By the time those counts were dropped, they had become intermixed, as a matter of public interest, with the whole controversy.

■ When defamatory statements involve a matter of public concern, a showing of actual malice is necessary for a plaintiff to receive punitive or presumed damages. *Jones,* 440 N.W.2d at 900. Malice must be established by clear and convincing proof. It can be shown by proving knowledge of falsity or reckless disregard for the truth. *Blessum v. Howard County Bd. of Supervisors,* 295 N.W.2d 836, 843 (Iowa 1980). The district court held, based on the evidence in the record, there was no support for a finding of malice, and we agree. The defendant newspaper based its story on an advanced copy of a motion for a new trial. Because the court document was not filed as a public record at the time of the publication, the newspaper cannot rely on the public documents privilege. The document obtained from Nickerson and Rosenberg nevertheless did provide sufficient indicia of reliability to prevent a finding of actual malice. We certainly think a motion to be filed as a court document by a member of the legal profession can be presumed to warrant a high degree of trustworthiness. We thus conclude that the granting of summary judgment on the issue of punitive damages was proper.

III. We turn to the issue of actual damages, which were defined this way in *Gertz:*

> [A]ctual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.

418 U.S. at 350, 94 S.Ct. at 3012, 41 L.Ed.2d at 811. The court however placed limitations on this definition by noting juries must be restrained by appropriate instructions, and all awards must be supported by competent evidence concerning the injury. *Id.* We adopted this definition in *Jones,* 440 N.W.2d at 900 n. 5.

■ The defendant Des Moines Register claims Johnson failed to present evidence to support his claim for actual damages when it filed for summary judgment. Iowa law requires a party resisting such a motion to set forth specific facts. *Uhl v. City of Sioux City,* 490 N.W.2d 69, 74 (Iowa App.1992). Iowa rule of civil procedure 237(e) states in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, *by affidavits or as otherwise provided in this rule,* must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

(Emphasis added.) Nothing in the record, beyond the claims in the petition, established damages. Johnson admitted in his deposition that he suffered no loss of income.

To recover in an action for defamation, a plaintiff must ordinarily prove some sort of cognizable injury, such as injury to reputation. 53 C.J.S. *Libel and Slander* § 6 (1987). Hurt feelings alone cannot serve as the basis of a defamation action. *Id.* at § 5. While a defamation suit can be viewed as serving the purpose of vindicating the plaintiff's character by establishing the falsity of the defamatory matter, if no harm can be established the action must be regarded as trivial in nature. *See* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 116A at 845 (5th ed. 1984).

We conclude the district court was correct in granting summary judgment on Johnson's claim for actual damages. Because Johnson did not prove injury, his claim against the Des Moines Register was correctly dismissed.

IV. As mentioned, Johnson also brought a defamation action against Nickerson and Rosenberg. The case went to trial and the jury returned a verdict in favor of the defendants. Johnson appeals from this verdict on several grounds. His first assignment asserts the trial court abused its discretion by permitting what Johnson characterizes as misconduct by opposing counsel during the trial. A trial court has considerable discretion in determining whether alleged misconduct of counsel was prejudicial, and we interfere only when a clear abuse of discretion has been demonstrated. *Oldsen v. Jarvis*, 159 N.W.2d 431, 436 (Iowa 1968).

There are two parts of Johnson's misconduct challenge. He first contends defense counsel improperly withheld names of witnesses and also failed to answer interrogatories in a timely manner. We do not reach the merits of this contention because Johnson failed to preserve error. Under a cardinal rule we do not consider any issues that were not presented to the trial court. *In re Staros*, 280 N.W.2d 409, 411 (Iowa 1979). It is no ground to depart from this rule because Johnson appeared in trial pro se. We have stated a layperson who fails to utilize professional assistance must face the consequences. *State v. Walker*, 236 N.W.2d 292, 295 (Iowa 1975).

Johnson also claims an ex parte communication between the trial judge and defense counsel was inappropriate. We place a dim view on ex parte communications, but no prejudice can be found here. *See State v. Lemburg*, 257 N.W.2d 39, 46 (Iowa 1977) (explaining that while a trial court should act impartially and neither initiate nor consider ex parte communications concerning a proceeding, canon 3A(4), Code of Judicial Conduct, the discussions in the present case were limited to matters of security and therefore were not prejudicial). There is some indication in the record that the ex parte communication dealt with courtroom safety (*i.e.*, placement of an armed deputy in the courtroom). The trial court stated that the merits of the case were not discussed. The conversation took place in the judge's chambers outside the presence of the jury. We find no abuse in the denial of Johnson's motion for a new trial.

V. In a confusing assignment Johnson asserts "the trial court erred and abused its discretion resulting in a verdict that was not supported by admissible evidence." The argument on this assignment seems aimed at evidentiary rulings.

The quoted assignment is out of plumb with fundamental rules on burden of proof. The trial was on Johnson's claim, and the burden of proof was on him to establish the elements of his claim by a preponderance of the evidence. Only rarely does a party carry such a burden as a matter of law. Iowa R.App.P. 14(f)(10). The jury was not bound to believe Johnson's evidence; the verdict against him would stand even if the defendants had offered no evidence.

We have examined Johnson's complaints about admissibility of evidence. One challenged testimony as hearsay, but it did not involve hearsay. Another challenge was directed to expert testimony by a witness Johnson thought to be unqualified. We also disagree with this challenge.

We find no merit in any of Johnson's assignments and conclude that judgment was properly entered against him.

**AFFIRMED.**