# IN THE COURT OF APPEALS OF IOWA

No. 19-0479
Filed April 15, 2020

**STEPHEN PATRICK HEYLAND,**
    Plaintiff-Appellant,

**vs.**

**DES MOINES COUNTY, IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Des Moines County, Daniel P. Wilson, Judge.

The plaintiff appeals the district court ruling granting summary judgment in favor of the defendant in the plaintiff's lawsuit for defamation, violation of the whistleblower statute, and intentional infliction of emotion distress. **AFFIRMED.**

Curtis Dial of Law Office of Curtis Dial, Keokuk, for appellant.

Wilford H. Stone and Nathan M. Kooker of Lynch Dallas, P.C., Cedar Rapids, for appellee.

Considered by Bower, C.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

Sixty-four-year-old Stephen Patrick Heyland has worked as a Des Moines County courthouse security officer since 2003. Heyland sued the County based on County Attorney Amy Beavers' statements during the County supervisors' meeting and because of emails she sent to others discussing Heyland's job performance.[1] But the gist of this case revolves around his contention that during the meeting, Beavers "falsely accused" Heyland of sending an anonymous letter criticizing the performance of Beavers and others in her office. The press covered the meeting, and a newspaper article implied that Heyland was the author. Offended by the article, Heyland sued raising claims for defamation, implied defamation, violation of the whistleblower statute (Iowa Code chapter 70A (2017)), and intentional infliction of emotional distress. Heyland demanded damages for past, present, and future lost wages; pain and suffering; damage to reputation; and attorney fees.[2] The County denied all allegations.

## I. Background Facts and Proceedings.

After discovery occurred, the County moved for summary judgment on all claimed theories.[3] Heyland did not timely resist the summary judgment motion, but the district court allowed consideration of the late filings. Without an oral

---

[1] The trial court determined Beavers' email correspondence complaining about Heyland's performance was protected by qualified privilege. In his brief, Heyland has not addressed that ruling by the trial court, thus Heyland waived any claimed defamation relating to the emails sent. *State v. Corbett*, 758 N.W.2d 237, 240 (Iowa Ct. App. 2008) (providing that failure to argue or cite authority in a brief is deemed a waiver of the issue).

[2] Heyland later conceded no entitlement to a lost-earning claim.

[3] The County contended (1) Beavers did not defame Heyland—directly or by implication, (2) Heyland failed to prove a violation of the whistleblower statute, and (3) Heyland failed to prove intentional infliction of emotional distress.

hearing, the court granted summary judgment against Heyland on all of his claims. Heyland appeals the district court ruling dismissing the entire case. He argues the court erred in finding that the County did not defame him (directly or by implication), the whistleblower statute was not violated, and an intentional-infliction-of-emotional-distress claim failed.

Through the courthouse grapevine, Beavers heard that Heyland complained about her personally and professionally and about the investigator (Cindy Bowen) hired for the county attorney's use. Beavers learned of an anonymous letter detailing similar complaints mailed to the County supervisors. Terminology in the letter along with the specific complaints tracked Heyland's earlier comments to others in the courthouse.[4] While unable to confirm the author's identity, Beavers believed that Heyland wrote or "had a part" in drafting the letter. Yet in a supervisors' meeting on September 20, 2016, Beavers confirmed to them that she did not know who wrote it. In her rebuttal to the letter at that meeting, Beavers noted similar details to complaints coming from Heyland. The meeting transcript read:

> Thank you. I'll be the brave. Amy Beavers, Des Moines County Attorney, 201 Jefferson Street, Burlington. Um, last week as many people probably know I guess there was an anonymous letter that went out about my office, an employee of my office. It was not sent to me, but I have seen it and read it. So, I just wanted to take a minute to address that this morning. *Um, I find it ironic that the complaints in that letter were strikingly similar to the complaints made by, uh courthouse security, Steve Heyland, a few months ago.* He

---

[4] Several months before this article appeared in the newspaper, Heyland complained about Beavers to his supervisory law enforcement officers. Not only did the letter raise a conflict of interest argument about Bowen's position in the county attorney's office, much like Heyland's complaints to the officers, but the letter had terms such as "icing on the cake" a phrase alleged to have been frequently used by Heyland.

was given the opportunity to come to a board meeting and put in a vacation slip to address his complaints and he declined to do so. And now we have an anonymous letter. *So, I'm not saying that it's him, I don't know who wrote it, but um, my position is I'm not going to acknowledge, uh or address the merits of the letter.* It's anonymous with a fake address full of misinformation and I'm not going to be intimidated or manipulated by an anonymous letter of that nature that's clearly just a personal vendetta against somebody in the office, so . . . I felt that at least I should address that this morning, so you know, it is what it is, and it will get filed accordingly *since it's anonymous.* So, thank you.

(Emphasis added.) A reporter from The Hawk Eye newspaper attended the supervisors' meeting. The Hawk Eye newspaper led with the headline "County attorney implies security guard sent anonymous letter" with a large photograph of Heyland on the front page. Featured in the article were statements by Heyland claiming Beavers blamed him for past incidents and denying authorship of the letter. Beavers, upset about the article, complained about perceived misrepresentations, and along with Bowen, asked the reporter for a retraction. Beavers clarified to the reporter she did not know who wrote the letter. No retraction was published.

## II. Scope and Standard of Review.

A court's grant of summary judgment is reviewed for correction of errors at law. *Linn v. Montgomery*, 903 N.W.2d 337, 342 (Iowa 2017). Summary judgment is appropriate only when the record shows no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W2d 695, 701 (Iowa 2016); *see also* Iowa R. Civ. P 1.981(3). We view the summary judgment record in a light most favorable to the nonmoving party. *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001). "The court must also consider on behalf of the nonmoving party every legitimate

inference that can be reasonably deduced from the record." *Id.* at 717–18. Our review is "limited to whether a genuine issue of material fact exists and whether the district court correctly applied the law." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). "[W]hen the moving party has shown 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law,'" summary judgment is appropriate. *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019) (citation omitted).

### III. Discussion.

We analyze the claims under three categories: defamation, violation of chapter 70A, and intentional infliction of emotional distress. We first address the defamation allegations.

**A. Defamation Claims.** Starting with Beavers' statements made to the County supervisors over the anonymous letter, Heyland cries defamation. The core of the argument centers on a false and defamatory attack on his reputation. Thus he maintains summary judgment was improper because of factual disputes related to this issue. But, as Heyland concedes in his brief, Beaver's conduct at the meeting is not factually disputed. Our task requires application of defamation law to this behavior. Heyland characterizes his claim as defamation based on an express statement or, alternatively, as an implicit suggestion by Beavers. Here the district court found Heyland was not a public figure and that Beavers' statement at the supervisors' meeting was not protected first amendment opinion speech. But because Beavers confirmed she did not know who wrote the letter, Heyland failed to prove a lack of veracity, which the court found to be a required element of

proof. Likewise the district court determined Heyland established no reputational harm in his prima facie defamation claim.

The centuries-old tort of defamation of character protects a person's common law "interest in reputation and good name." *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996). "It is reputation which is defamed, reputation which is injured, and reputation which is protected by the law of defamation." *Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am. Jur. 2d *Libel and Slander* § 2, at 338–39 (1995)). There are two types of defamation—per quod and per se. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 46 (Iowa 2018); *Johnson*, 542 N.W.2d at 510. Defamation per se includes statements that have "a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse." *Johnson*, 542 N.W.2d at 510 (quoting *Prewitt v. Wilson*, 103 N.W. 365, 367 (Iowa 1905)). They are statements that, "based on the very nature of the language used," *id.*, were actionable "without proof of malice, falsity or damage." *Vojak v. Jensen*, 161 N.W.2d 100, 104 (Iowa 1968), *abrogated on other grounds by Barreca v. Nickolas*, 683 N.W.2d 111, 119–120 (Iowa 2004)). Defamation per se involved cases in which there were accusations of an individual being a liar, *see Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996), of an individual committing a crime of moral turpitude, *see Rees v. O'Malley*, 461 N.W.2d 833, 835 (Iowa 1990), or of someone falsifying information, *see Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984). Beavers' statements do not meet this criteria.

On the other hand, defamation per quod simply means that one must "refer to facts or circumstances beyond the words actually used to establish the defamation." *Johnson*, 542 N.W.2d at 510. For example, a statement would be libel per quod where the words in themselves were not considered sufficiently harmful to the plaintiff without further context. *See, e.g.*, *Ragland v. Household Fin. Corp.*, 119 N.W.2d 788, 792 (Iowa 1963) (holding a statement that the plaintiff had not paid a debt was not libelous per se). To succeed in proving defamation per quod, Heyland had to prove all six elements: (1) publication, (2) a defamatory statement, (3) falsity, (4) maliciousness, (5) the statement was of or concerning the party, and (6) a resulting injury. *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). In this category of defamation, the plaintiff must prove damages, such as injury to reputation. *Id.* at 444. "Hurt feelings alone cannot serve as the basis of a defamation action." *Johnson*, 542 N.W.2d at 513. While Heyland addressed having "substantial stress and humiliation" after the article appeared, he presented no evidence of injury to reputation.[5] In fact, he remains an employee of the County, receiving raises along the way with no employment consequences. Further he identified no witnesses supporting any dent or disruption in his reputation, no medical treatment or counseling for any condition related to the lawsuit, or any other ramifications other than his subjective feeling Beavers and her office ignored him. Asked about his loss of reputation, Heyland confirmed that "anybody that knows me that I worked with out at the jail, personal friends, people who are friends

---

[5] Heyland asserts his damages are presumed, but that doctrine applies only to defamation per se, which is inapplicable under these facts. *See Bandstra*, 913 N.W.2d at 46–47 (noting elements of falsity, malice, and injury are legally presumed if a statement is defamatory per se).

of mine or acquaintances know me, know that I did not write that letter or would not write an anonymous letter." Heyland's own words established no loss of reputation.

Still, Heyland raised a theory of defamation by implication. The tort of defamation extends beyond the literal meaning of the communication. *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 770 (Iowa 2006). "The tort recognizes '[i]t is the thought conveyed, not the words, that does the harm.'" *Bertrand v. Mullin*, 846 N.W.2d 884, 891 (Iowa 2014) (alteration in original) (citation omitted). "Otherwise, by a careful choice of words in juxtaposition of statements in a publication, a potential defendant may make statements that are true yet just as damaging as if they were actually false." *Stevens v. Iowa Newspapers, Inc.*, 728 N.W.2d 823, 828 (Iowa 2007) (ruling the jury would decide whether comments accurately stating a sports columnist "rarely attended events upon which he wrote columns" was defamation by implication where statements implied he fabricated the columns he wrote). Similarly Heyland contends that while Beavers said she did not know the author of the letter, her statements implied it was Heyland. Assuming his defamation by implication theory applies, Heyland must still prove all elements of defamation to survive summary judgment. As outlined above, he failed to establish a resulting injury, so summary judgment is appropriate on all theories of defamation.

**B. Whistleblower Claim—Chapter 70A.** Next Heyland contends his complaints about Beavers and her office are protected under the "whistleblower" code section. *See* Iowa Code § 70A.29(1). That section provides:

> A person *shall not discharge* an employee from or *take or fail to take action* regarding an employee's appointment or proposed appointment to, promotion or proposed promotion to, or any advantage in, a position in employment by a political subdivision of this state as a reprisal for a disclosure of any information by that employee to a member or employee of the general assembly, an official of that political subdivision, a person providing human resource management for that political subdivision, or a state official, or for a disclosure of information to any other public official or law enforcement agency if the employee, in good faith, reasonably believes the information evidences a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety. This section does not apply if the disclosure of the information is prohibited by statute.

*Id.* § 70A.29(1) (emphasis added). He claims that after he made disclosures about the County Attorney's office to law enforcement,[6] Beavers harassed him and made false statements and complaints about him. Considering the nature of his complaints, Heyland argues he engaged in statutorily protected activity under Iowa Code sections 70A.28 and 70A.29. To put it simply, Heyland requested damages claiming Beavers "h[eld] a grudge" against him after he reported her office.

In the summary judgment ruling, the district court only analyzed section 70A.28 and addressed whether that section "requires Plaintiff have his employment terminated or suspended in order to receive damages." The court found that the statutory language operated only to address harm from an adverse employment action and does not apply to a single emotional distress theory of liability.

---

[6] Heyland acknowledges complaining to his supervisors that as county attorney, Beavers "engaged in violations of rules of the state of Iowa, mismanagement, a gross abuse of funds and/or abuse of authority."

The County asserts that section 70A.28 cannot apply to these facts in any event.[7] We agree. But even examining section 70A.29, Heyland is afforded no remedy. Even if Heyland engaged in protected behavior, his claim fails because there was no adverse employment effect. *See Worthington*, 684 N.W.2d at 233 (stating section 70A.28 is "not designed to weigh the equities and do justice between the parties, but to prevent harm to the public policy [of protection from retaliation]"). Because Heyland failed to prove that any employment action against him was a "reprisal" for his report against Beavers, his "whistleblower" claims lacks the requisite proof to sustain summary judgment. *See Smith v. Iowa State Univ. of Sci. & Tech.*, No. 12-1182, 2013 WL 4506393, at *5 (Iowa Ct. App. Aug. 21,

---

[7] We agree with the County because section 70A.28 is a parallel whistleblower statute for State of Iowa employees. *Worthington v. Kenkel*, 684 N.W.2d 228, 230–31 (Iowa 2004). Section 70A.28(2) reads in pertinent part:

> A person shall not discharge an employee from or take or fail to take action regarding an employee's appointment or proposed appointment to, promotion or proposed promotion to, or any advantage in, a position in a *state employment system administered by, or subject to approval of, a state agency* as a reprisal for a failure by that employee to inform the person that the employee made a disclosure of information permitted by this section, or for a disclosure of any information by that employee to a member or employee of the general assembly, a disclosure of information to the office of ombudsman, a disclosure of information to a person providing human resource management for the state, or a disclosure of information to any other public official or law enforcement agency if the employee, in good faith, reasonably believes the information evidences a violation of law or rule, mismanagement, a gross abuse of funds, an abuse of authority, or a substantial and specific danger to public health or safety. However, an employee may be required to inform the person that the employee made a disclosure of information permitted by this section if the employee represented that the disclosure was the official position of the employee's immediate supervisor or employer.

(Emphasis added.); *compare with* Iowa Code § 70A.29 (allowing a cause of action for aggrieved employees of a political subdivision of the State). While applying to different subset groups, the analysis of the sections remains similar

2013), *aff'd in part and vacated in part,* 851 N.W.2d 1 (Iowa 2014) (holding no causal relationship existed between wrongful conduct against employee and his reporting to a public official, noting that actions against him occurred even before the disclosure). Following the dates of his complaints, Heyland remained the courthouse security guard at the same pay with the same hours. Nothing changed.

Likewise, Heyland's reading of these sections to allow a whistleblower claim to recoup emotional distress damages without the requisite showing of an adverse employment action fails as a matter of law. *See Zwanziger v. O'Brien*, No. 11-1548, 2012 WL 4513836, at *6 (Iowa Ct. App. Oct. 3, 2012) (noting that "[t]here is nothing in the statutory language of section 70A.29 (which is the only basis upon which [the plaintiff] sought relief) allowing for damages for emotional harm"). We have no authority to create such an extension, and the language of the statute provides none. Heyland failed to show there he was *discharged* or that someone *took or failed to take action* regarding his appointment or proposed appointment to, promotion or proposed promotion to, or any advantage in, a position in employment. *See* Iowa Code § 70A.29(1). Thus, the district court appropriately granted summary judgment on the "whistleblower" claim.

**C. Intentional Infliction of Emotional Distress.** Finally, Heyland established no claim to emotional distress damages. In his brief on this issue, Heyland identifies the news article mishap as the cause of his distress. It is not easy to prove intentional infliction of emotional distress. The four elements required to demonstrate this tort are

> (1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or

extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress.

*Hedlund v. State*, 930 N.W.2d 707, 723–24 (Iowa 2019) (citations omitted).  There must be substantial evidence of extreme conduct.  *Vinson*, 360 N.W.2d at 118.  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Northrup v. Farmland Indus., Inc.*, 372 N.W.2d 193, 198 (Iowa 1985) (quoting Restatement (Second) of Torts § 46 cmt. d, at 73 (Am. Law Inst. 1965)).

"It is for the court to determine in the first instance whether the relevant conduct may reasonably be regarded as outrageous."  *Vinson*, 360 N.W.2d at 118; *see also Roalson v. Chaney*, 334 N.W.2d 754, 756 (Iowa 1983).  Beavers' statements during the County supervisors' meeting hardly suggest conduct that is outside the bounds of decency or support a claim of "outrageousness."  *Vinson*, 360 N.W.2d at 119 (finding conduct did not exceed all bounds of decency even if the actions could be characterized as "petty and wrong, even malicious").  In *Hedlund*, an employee alleged his supervisors continually repeated known falsehoods statewide; even though the employee claimed humiliation from the public disclosures the behavior was not outrageous.  930 N.W.2d at 725.  Beavers is not Heyland's "boss," but this case highlights the high hurdle to climb.  Beavers' limited reference to the possibility that the complaints in the anonymous letter sounded similar to those of Heyland pales in contrast to other Iowa cases finding liability.  *Compare Meyer v. Nottger*, 241 N.W2d 911, 914–20 (Iowa 1976) (finding fact questions existed when the defendant funeral home owner misrepresented

the condition of the plaintiff's father's corpse, represented certain caskets were mandatory, and inappropriately interfered with the funeral arrangements), *with Vinson*, 360 N.W.2d at 120 (Iowa 1984) (granting summary judgment where deliberate campaign to badger and harass employee, although petty, wrong, and even malicious, was not considered outrageous).

Even assuming he could show Beavers' conduct was outrageous by legal standards, Heyland provided no evidence he suffered severe or extreme emotional distress. Heyland sought no treatment for any distress related to the newspaper and email fiasco, let alone mental-health counseling or guidance. Complaining about hurt feelings does not reach the required bar. *See Barreca*, 683 N.W.2d at 124 (concluding that despite the plaintiff suffering "a great deal of humiliation, embarrassment, stress, and loss of sleep" due to the defendant's allegedly outrageous conduct, the plaintiff's claims did not amount to severe or extreme emotional distress). Given this record, Heyland cannot recover under this theory as a matter of law.

**IV. Conclusion.**

Because Heyland established no basis for the theories alleged in his petition, we find the district court correctly granted summary judgment. We affirm the district court on all grounds.

**AFFIRMED.**