Todd BENNETT and Mason City Human
Rights Commission, Appellants,

v.

MC # 619, INC., Appellee,

CRW # 644, Inc., Appellee.

No. 97–350.

Supreme Court of Iowa.

Nov. 25, 1998.

Randall E. Nielsen of Pappajohn, Shriver, Eide & Nicholas, P.C., Mason City, for appellants.

Dennis W. Johnson of Dorsey & Whitney LLP, Des Moines, for appellee, MC # 619, Inc.

David A. Tank of Davis, Brown, Kuehn, Shors & Roberts, P.C., Des Moines, for appellee, CRW # 644, Inc.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

LAVORATO, Justice.

Todd Bennett filed suit against the defendants, MC # 619, Inc. (MC) and CRW # 644, Inc. (CRW), claiming they were liable as successor corporations for an unpaid judgment on his employment discrimination claim. The unpaid judgment was against a prior owner of the restaurant where Bennett had worked. The district court granted MC's motion for summary judgment but denied CRW's motion for summary judgment. Both motions asserted Bennett's claim was barred under the doctrine of res judicata. The court also denied Bennett's motion for summary judgment against both defendants. Bennett appeals from the district court order granting MC's motion for summary judgment and denying his own motion for summary judgment against MC. CRW cross-appeals from the district court order denying its motion for summary judgment. We affirm on both the appeal and cross-appeal. We remand for further proceedings.

## I. Facts.

Bennett filed a complaint with the Mason City Human Rights Commission against Bonanza Family Restaurant in Mason City and Michael Bitz, one of the restaurants assistant managers. Bennett alleged that on April 5, 1987, Bitz terminated his employment at the restaurant in retaliation for Bennett's earlier filing of a sex discrimination complaint against the restaurant.

An administrative law judge (ALJ) heard the complaint and issued a proposed decision which the commission adopted. The commission determined that the restaurant and Bitz had discriminated against Bennett in violation of the Mason City Human Rights Ordinance and that Bennett was entitled to $7077.87 in back pay and $7500 in emotional distress damages, together with interest and attorney fees.

The commission remanded the case to the ALJ in response to a motion by Bennett. Bennett claimed that the Mason City restaurant had been sold and he needed to determine the identity of the new owners. The ownership issue arose because Bonanza Family Restaurant and Bitz challenged the ALJ's proposed decision on the ground that Bonanza Family Restaurant was not a legal entity.

In the remand order the commission directed the ALJ to conduct "further proceedings on the issue of the identities of the parties against whom the judgment in the decision is to be rendered, and the identity of the present owners of Bonanza Family Restaurant." While the case was pending on remand, Bennett moved to amend the complaint to add as respondents, Family Restaurants, Inc., a South Dakota corporation, and MC, an Iowa corporation. Bennett contended that Family Restaurants, Inc. owned and operated the Bonanza Family Restaurant in Mason City on the date of the incident. He also contended that MC succeeded Family Restaurants, Inc. as the owner and operator of the Bonanza Family Restaurant in Mason City.

The ALJ granted the amendment and later held a hearing on the following issues: (1) whether Bonanza Family Restaurant should be replaced as a respondent by Family Restaurants, Inc.; (2) whether MC may be held to have assumed the liabilities of respondent Bonanza Family Restaurant or Family Restaurants, Inc. for the damages the commission awarded Bennett; and (3) the proper amount of attorney fees to be awarded.

At the beginning of the hearing, Bennett and Family Restaurants, Inc. agreed that

Family Restaurants, Inc. should be substituted for Bonanza Family Restaurant as a respondent and the commission's decision should be entered against Family Restaurants, Inc. instead of Bonanza Family Restaurant. The substitution confirmed the true state of affairs: When Bennett's employment was terminated, Family Restaurants, Inc. owned and operated Bonanza Family Restaurant in Mason City. "Bonanza Family Restaurants" was merely a trade name.

After the hearing, the ALJ made the following findings. Besides the Bonanza Family Restaurant in Mason City, Family Restaurants, Inc. owned and operated two other Bonanza Family Restaurants, the "East" and "West" Bonanza Family Restaurants in Cedar Rapids. Rodney Charles Converse and Kevin Close formed MC in early October 1990 to own and operate the Bonanza Family Restaurant in Mason City. Family Restaurants, Inc. transferred ownership of Bonanza Family Restaurant in Mason City to MC on October 15, 1990, several months before the ALJ had issued his proposed decision awarding damages to Bennett. At the time of this transfer, MC also took over the Cedar Rapids "East" Bonanza Family Restaurant. Family Restaurants, Inc. remained the owner of the Cedar Rapids "West" Bonanza Family Restaurant.

The ALJ also made findings regarding Bennett's allegations that MC as a successor in interest was liable for the damages ordered by the commission. In regard to the successor liability issue, the ALJ followed *First Judicial District Department of Correctional Services v. Iowa Civil Rights Commission*, 315 N.W.2d 83 (Iowa 1982). Pursuant to that case, the ALJ required Bennett to prove that (1) MC had notice of Bennett's claim; (2) Family Restaurants, Inc. was presently unable to pay the damages ordered by the commission; and (3) substantial continuity of business operations existed between Family Restaurants, Inc. and MC. *See id.* at 90. The ALJ found that Bennett had proved elements (1) and (3), but not (2).

The commission adopted the ALJ's decision. Notwithstanding Bennett's request to do so, the commission did not retain jurisdiction over MC in the event Bennett was unable to collect from Family Restaurants, Inc. Bennett did not seek judicial review.

Later, Bennett and the commission filed suit in district court to obtain an enforceable judgment against Family Restaurants, Inc. for the damages the commission had awarded. *See* Iowa Code § 216.17(2). Family Restaurants, Inc. defaulted and the district court entered judgment for the amount of such damages.

Bennett attempted to levy execution on the Cedar Rapids "West" Bonanza Family Restaurant, believing it still belonged to Bonanza Family Restaurants, Inc. In fact, the owner of the real estate on which the restaurant was located terminated Family Restaurants, Inc.'s lease on March 23, 1992. The owner of the real estate was also the sole shareholder of CRW, the entity that took over the operation of the Cedar Rapids "West" Bonanza Family Restaurant, leased its equipment, and leased the premises.

Several months later, Bennett discovered that Family Restaurants, Inc. had filed bankruptcy. Eventually, Bennett received $138.29 from the bankruptcy, representing his pro rata share of assets for unsecured creditors. In November 1993, the state of South Dakota administratively dissolved Family Restaurants, Inc. for failing to file annual reports.

## II. Present Proceedings.

Following these events, Bennett filed the present action against MC and CRW. Count I seeks relief against both defendants on the theory of successor liability. Count II seeks relief against both defendants on the grounds of fraudulent conveyance. Count III seeks attorney fees.

Both defendants moved for summary judgment. Bennett also moved for summary judgment against both defendants. The district court granted MC's motion, stating that "principles of res judicata prevent plaintiff from re-litigating claims previously litigated or which could have been litigated in the administrative action." The court overruled Bennett's and CRW's motions for summary judgment, concluding that "genuine issues of material fact exist which preclude the court

from granting summary judgment on behalf of either party."

Bennett appealed from the ruling granting MC's motion for summary judgment and the ruling denying his own motion for summary judgment against MC. He did not appeal from the ruling denying his motion for summary judgment against CRW. CRW cross-appealed from the ruling denying its motion for summary judgment.

### III. Scope of Review.

On rulings regarding motions for summary judgment, our review is for errors at law. Iowa R. App. P. 4; *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Johnson*, 542 N.W.2d at 510.

Bennett and MC agree that as between them there is no genuine issue of material fact and that the issue is purely a legal one. Our task therefore is only to determine whether the district court correctly applied the law. See *Hoefer v. Wisconsin Educ. Ass'n Ins. Trust*, 470 N.W.2d 336, 338 (Iowa 1991).

As between Bennett and CRW, Bennett contends there are genuine issues of material fact as the district court found. CRW argues to the contrary and therefore insists it is entitled to a judgment as a matter of law. Our task as between these two parties is to determine whether there are genuine issues of material fact. *Daboll v. Hoden*, 222 N.W.2d 727, 731 (Iowa 1974). As the moving party, CRW has the burden to show absence of any genuine issue of material fact and that it is entitled to judgment as a matter or law. *Id.* We review all material properly before the court in the light most favorable to the opposing party—in this case Bennett. *Id.*

### IV. Issues on Appeal.

A. **Res judicata/claim preclusion and successor liability.** On appeal, Bennett contends the district court should not have granted MC's motion for summary judgment and should have granted his motion for summary judgment on the issue of res judicata regarding the successor liability issue. Because we conclude the district court correctly granted MC's motion, we do not reach Bennett's contention that the court should have granted his motion.

Bennett presents three arguments to support his contention that the court should not have granted MC's motion for summary judgment as to Count I of his petition dealing with successor liability. First, he argues that he had no fair opportunity to prove "present inability" on the part of Family Restaurants, Inc. to pay the damages the commission awarded. Second, he argues that "present inability" on the part of Family Restaurants, Inc. is a precondition to suit, and the precondition was not satisfied until he was unable to collect the damages awarded from Family Restaurants, Inc. Last, he argues that the present action is a separate claim based upon separate facts.

1. **Res judicata principles generally.** According to the doctrine of res judicata,

a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.

*Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 440 (Iowa 1996) (citations omitted). In short, the party asserting the bar must show that the first suit involved the same parties or parties in privity, the same cause of action, and the same issues. *Id.*

Res judicata is a generic term that includes claim preclusion and issue preclusion. *Id.* at 440–41. When used in the sense of claim preclusion, res judicata means that further litigation on the claim is barred. *Id.* at 441. When used in the sense of issue preclusion, res judicata means that further litigation on a specific issue is barred. *Id.* Here, we are dealing with claim preclusion.

The policy of the law underlying claim preclusion is that a claim cannot be

split or tried piecemeal. Thus, a party must try all issues growing out of the claim at one time and not in separate actions. An adjudication in a prior action between the same parties on the same claim is *final* as to all issues that could have been presented to the court for determination. *Id.* at 441. Simply put, a party is not entitled to a "second bite" simply by alleging a new theory of recovery for the same wrong. *Id.*

### 2. Bennett's contentions.

**■■■■■ a. No fair opportunity to prove "present inability."** To prove successor liability in the context of a civil rights case, the complainant must prove that (1) the successor had notice of the existing charge of discrimination, (2) the predecessor is presently unable to provide relief, and (3) substantial continuity exists between the operations of the predecessor and the successor. *First Judicial Dist.*, 315 N.W.2d at 90. As mentioned, the commission found that Bennett had proved elements (1) and (3) but not (2). Because Bennett failed to prove that Family Restaurants, Inc. was presently unable to pay the damages awarded, the commission refused to assess the damages against MC on the theory of successor liability.

Bennett contends the commission's ruling was not binding on him under the doctrine of res judicata. In support of this contention, Bennett relies on Restatement (Second) of Judgments § 83(2)(b) and (e) (1982).

Section 83 of the Restatement (Second) of Judgments in relevant part provides:

Adjudicative Determination by Administrative Tribunal

(1) Except as stated in Subsections (2), (3), and (4), a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.

(2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication, including:

(a) Adequate notice to persons who are to be bound by the adjudication. . . .

(b) The right on behalf of a party to present evidence and legal argument in support of the party's contentions and fair opportunity to rebut evidence and argument by opposing parties.

(c) A formulation of issues of law and fact in terms of the application of rules with respect to specified parties concerning a specific transaction, situation, or status, or a specific series thereof;

(d) A rule of finality, specifying a point in the proceeding when presentations are terminated and a final decision is rendered; and

(e) Such other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

The rationale underlying section 83 is that

[w]here an administrative agency is engaged in deciding specific legal claims or issues through a procedure substantially similar to those employed by courts, the agency is in substance engaged in adjudication. *Decisional processes using procedures whose formality approximates those of courts may properly be accorded the conclusiveness that attaches to judicial judgments. Correlatively, the social importance of stability in the results of such decisions corresponds to the importance of stability in judicial judgments. The rules of res judicata thus generally have application not only by courts with respect to administrative adjudications but also by agencies with respect to their own adjudications.*

Restatement (Second) Judgments § 83 cmt. b (emphasis added).

Our cases are in accord with this rationale. In a short-hand expression of this rationale, we have held that the final adjudicatory decision of an administrative agency like the civil rights commission is entitled to res judicata

effect as if it were a judgment of a court. *City of Des Moines Police Dept. v. Iowa Comm'n,* 343 N.W.2d 836, 839 (Iowa 1984); *see also Bond v. Cedar Rapids Television Co.,* 518 N.W.2d 352, 357 n. 4 (Iowa 1994) ("Final determinations of administrative agency acting in a judicial capacity are to be accorded preclusive effect in substantive judicial proceedings."); *Toomer v. Iowa Dept. of Job Serv.,* 340 N.W.2d 594, 598 (Iowa 1983) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.") (quoting *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966); also citing Restatement (Second) of Judgments § 83 ( " [A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.")).

Here, Bennett contends only two elements of adjudicatory procedure described in section 83 were missing. One includes "[t]he right of a party to present evidence and legal argument in support of the party's contentions and a fair opportunity to rebut evidence and argument by opposing parties." Restatement (Second) of Judgments § 83(2)(b). The other includes

> [s]uch other procedural elements as may be necessary to constitute the proceeding a sufficient means of conclusively determining the matter in question, having regard for the magnitude and complexity of the matter in question, the urgency with which the matter must be resolved, and the opportunity of the parties to obtain evidence and formulate legal contentions.

*Id.* § 83(2)(e).

As to these two elements, Bennett points out that he had no enforceable judgment at the time the commission decided the successor liability issue. Without such a judgment, Bennett insists he had no fair opportunity to utilize post-judgment remedies to prove Family Restaurants, Inc.'s inability to pay the damages awarded. Those remedies included levying execution on the company's assets and pursuing a judgment debtor's exam to prove the company's financial inability to pay the damages awarded.

In addition, Bennett claims that without the enforceable judgment there were no sufficient means in the proceedings before the commission to allow him to gather the necessary information to prove the company's financial inability to pay the damages. Moreover, he insists there was no urgency that the commission determine the issue of successor liability at the moment it did. Finally, he makes the bald contention that he had no sufficient opportunity to obtain evidence and formulate his legal contentions with respect to the company's financial inability to pay the damages awarded.

At first blush, these arguments seem persuasive. On further analysis, however, we conclude, for several reasons, they do not carry the day for Bennett. First, the "matter in question" concerned the financial inability of Family Restaurants, Inc. to pay the damages awarded, an issue that was neither complex nor of any significant magnitude.

Second, the lack of an enforceable judgment is not controlling. The record shows that Bennett had access to all of the documents relating to MC's purchase of the Bonanza Family Restaurant in Mason City. His request for admissions, to which MC responded, gave Bennett all the information he needed regarding that transaction. Moreover, he was in a position to use whatever discovery at the agency level he deemed necessary to prove his claim that Family Restaurants, Inc. was financially unable to pay the damages awarded. The discovery procedure was just as effective, if not more so, than a judgment debtor's exam to discover such inability.

Third, it is true there was no urgency for the commission to determine the successor liability issue. Bennett, however, is the one who triggered this issue. He could have waited until the enforcement action to raise the successor liability issue, at which point, the district court could have remanded the case to the commission to take additional evidence on the issue. *See City of Des*

*Moines*, 343 N.W.2d at 839–40. In these circumstances, we think he bore the risk of the commission giving him exactly what he asked for—a determination of the successor liability issue in the proceeding before the commission. He cannot now complain because that determination was adverse to his position.

Fourth, Bennett's contention that he had no sufficient opportunity to formulate his legal contentions simply lacks merit. The successor liability issue was easy to formulate: There was already Iowa case authority spelling out the elements.

Last, there was record evidence which the commission found convincing that showed Family Restaurants, Inc. was financially able at the time to pay the damages awarded. Bennett presented no evidence to show the contrary. Based on all of the evidence before it, the commission determined that MC was not a successor in interest to Family Restaurants, Inc.

Our review of the record satisfies us that all of the elements of adjudicatory procedure described in subsection (2)(b)-(e) of section 83 of the Restatement (Second) of Judgments were available in the proceeding before the commission to determine the issue of successor liability, and more specifically, the financial inability element. In other words, the commission was deciding issues through a procedure substantially similar to those employed by courts and was thus engaged in adjudication. For this reason, the decision the commission reached on successor liability was conclusive and binding on Bennett under the principles of res judicata. Moreover, because Bennett did not seek judicial review and the commission neither explicitly nor implicitly retained jurisdiction to later determine damages, its decision became final. *See City of Des Moines*, 343 N.W.2d at 839 (holding that where civil rights commission neither explicitly nor implicitly retains jurisdiction to determine damages, its decision is final).

■ **b. Precondition to suit.** As to his contention that "present inability" to pay damages is a precondition to suit, Bennett places heavy emphasis on the word "present." In addition, he relies heavily on Restatement (Second) of Judgments section 20(2) (1982) and several Nebraska cases.

Section 19 of the Restatement (Second) of Judgments provides that "[a] valid and final judgment rendered in favor of the defendant bars another action by the plaintiff on the same claim." This general rule is subject to exceptions. One of those exceptions is section 20(2), which provides:

A valid and final personal judgment for the defendant, which rests on the prematurity of the action or on the plaintiff's failure to satisfy a precondition to suit, does not bar another action by the plaintiff instituted after the claim has matured, or the precondition has been satisfied, unless a second action is precluded by operation of the substantive law.

Restatement (Second) of Judgments § 20(2).

In his words, Bennett "failed to establish successor liability on the part of MC only because he could not, at the time of the hearing, establish a precondition to successor liability, that precondition being the present inability of the predecessor to pay a judgment." Thus, he concludes, his attempt to establish successor liability against MC at the agency level was premature and for that reason res judicata does not bar his present attempt. In support of this argument, Bennett relies heavily on our use of the words "presently unable to provide relief" in *First Judicial District*, 315 N.W.2d at 90. As mentioned, this is one of the elements of successor liability.

Bennett would have us interpret the element of "presently unable" as time-dependent—"a condition precedent to suit, that is, an element that may not be satisfied at some point in time but may be satisfied at a later time." Such an interpretation is unreasonable and not supported by case law employing the successor liability theory in the context of discrimination suits. The seminal case is *Equal Employment Opportunity Commission v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir.1974). In *First Judicial District*, we cited and relied on *MacMillan* when we adopted successor liability in discrimination suits.

*MacMillan* borrowed the doctrine of successor liability from labor law cases. The case cited the following elements as relevant to the imposition of liability for the discriminatory acts of a predecessor employer:

(1) [W]hether the successor company had notice of the charge, (2) *the ability* of the predecessor to provide relief, (3) whether there has been a substantial continuity of business operations, (4) whether the new employer uses the same plant, (5) whether he uses the same or substantially the same work force, (6) whether he uses the same or substantially the same supervisory personnel, (7) whether the same jobs exist under substantially the same working conditions, (8) whether he uses the same machinery, equipment and methods of production and (9) whether he produces the same product.

*MacMillan*, 503 F.2d at 1094 (emphasis added).

In *First Judicial District* we quoted these elements from *MacMillan* and then we said:

For purposes of analysis the factors [in *MacMillan*] can be separated into three requirements. Imposition of successor liability is proper only when (1) the successor had notice of the existing charge of discrimination, (2) the predecessor is *presently unable* to provide relief, and (3) substantial continuity exists between the operations of the predecessor and successor. Factors four through nine are essentially concerned with continuity and are analyzed as components of that requirement.

315 N.W.2d at 90 (emphasis added).

Thus, *MacMillan* does not even use the terms "presently unable" but simply refers to the ability of the predecessor to provide relief. In our analysis of the facts pertaining to this element in *First Judicial District*, we deleted any mention of the word "presently":

The second requirement is ability on the part of the predecessor to provide relief. The Commission found that BHDCS no longer existed and was therefore unable to provide Berdell with back pay or reinstatement. We agree with this finding.

*First Judicial Dist.*, 315 N.W.2d at 90.

■ When we used the word "presently" in *First Judicial District*, we were using it in the sense that the complainant must prove the predecessor's inability to provide the relief awarded *at the time of the hearing*. We were not using it in the sense that it was a temporal precondition that the complainant could establish later. Moreover, we have found no case authority in discrimination cases suggesting that complainants can prove the inability element in a piecemeal fashion as Bennett urges.

The two Nebraska cases Bennett cites, *Security State Bank v. McCoy*, 219 Neb. 132, 361 N.W.2d 514 (Neb.1985) and *Security State Bank v. Gugelman*, 230 Neb. 842, 434 N.W.2d 290 (Neb.1989) are simply not on point. We agree with MC these cases merely stand for the proposition that the exception to the res judicata bar applies only when a procedural precondition to suit has not been met or where an action has been brought prematurely because of a procedural precondition to suit.

For example, in *McCoy*, a statute prohibited a suit against a partner individually for a partnership debt until the creditor (1) secured a judgment against the partnership and (2) established that partnership assets were insufficient to satisfy the judgment. 361 N.W.2d at 515. There was no prior judgment against the partnership, a statutory condition precedent to the bringing of an action against the individual partners. *Id.* Thus, the creditor was not entitled to a judgment against the individual partners until there was a judgment against the partnership. *Id.*

*Gugelman* was an outgrowth of *McCoy*. The creditor obtained a judgment against the partnership and established the partnership assets were insufficient to satisfy the judgment. The appellate court ruled that res judicata principles did not bar the creditor's suit against the individual partners. *Gugelman*, 434 N.W.2d at 292–93. In so deciding, the appellate court explained:

The issue upon the prior appeal in this case was whether the plaintiff could satisfy its judgments against the partnership out of the assets of the defendant Gugelman. . . . This court . . . held that the

plaintiff had failed to satisfy a condition precedent to its right to proceed against the partners. The effect of our decision was to declare that the plaintiffs attempt to proceed against the partners individually was premature.

*Id.* at 292.

Here, the financial inability of Family Restaurants, Inc. was an element of the successor liability theory. It was not a precondition to establishing successor liability of that company. Thus, Bennett's attempt to establish successor liability against MC in the proceeding before the commission was not an attempt to proceed against MC prematurely. For all these reasons, we reject Bennett's contentions and arguments regarding the inability to pay element of the successor liability claim.

■ **c. Separate claim.** Bennett last contends that the present claim for successor liability is a separate one, based upon separate facts, from the successor liability claim the commission decided. What makes the present claim different, Bennett argues, is that now the parties are litigating the present inability of Family Restaurants, Inc. to pay the damages the commission awarded him. This issue, he insists, is different from the inability of the company to pay the damages at the time the commission decided the successor liability claim.

As mentioned, we decided that "present inability" simply means the inability of the predecessor to pay the damages awarded at the time the successor liability issue is being decided, and not at some future time. The commission decided the issue of present inability adversely to Bennett and therefore concluded MC had no successor liability. The claim before the district court was no different from the claim before the commission. For that reason, Bennett's contention that the present claim for successor liability is a separate claim must fail.

■ **B. The fraudulent concealment count.** As mentioned, the district court sustained MC's motion for summary judgment. The motion was directed at all counts of the petition. Bennett alleged fraudulent concealment in Count II of his petition.

On appeal, Bennett did not challenge the court's ruling on the fraudulent concealment claim in his initial brief. He assigned no error on this ruling, cited no authority, and made no argument. His failure to do so constitutes a waiver of this issue. *See* Iowa R. App. P. 14(a)(3) (providing that failure of a party in an appellate brief to state, argue, or cite to authority in support of an issue may be deemed a waiver of the issue); *Hollingsworth v. Schminkey*, 553 N.W.2d 591, 596 (Iowa 1996) (holding that insured appealing summary judgment for uninsured motorist insurer waived review of his negligence and bad faith claims against insurer where he cited no authority and made no arguments in his brief as to any claimed error on these claims). We refuse to consider the issue even though MC raised it in its brief and Bennett responded in his reply brief. *Cf. Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996) (holding that parties cannot assert issues for the first time in reply brief, and when they do, we will not consider the issue).

## V. The Cross–Appeal.

As recalled, Family Restaurants, Inc. was the owner of the Cedar Rapids West Bonanza Family Restaurant until March 23, 1992, when CRW took over its operations. The district court overruled CRW's motion for summary judgment regarding Bennett's claim of successor liability in connection with this transaction. Contrary to CRW's contentions, we conclude for reasons that follow that there are genuine issues of material fact on all three elements of the successor liability theory we adopted in *First Judicial District*.

■ **A. Successors notice of existing charge of discrimination.** Family Restaurants, Inc. owned and operated two Bonanza Family Restaurants in Cedar Rapids: the East and the West Bonanza Family Restaurants. At the time that Family Restaurants, Inc. transferred ownership of the East restaurant to MC in October 1990, it retained ownership of the West restaurant. Family Restaurants, Inc. leased the equipment in

this restaurant from John A. Thelen. Thelen terminated the lease in March 1992.

Thelen–Mitchell Enterprises, a partnership, owned the land upon which the West restaurant was operated. The partnership had leased the premises to Family Restaurants, Inc. and terminated the lease in March 1992 because of the company's failure to pay rent. B. Lee Mitchell and Susan Mitchell were officers and owners of Family Restaurants, Inc. B. Lee Mitchell was also a partner of John A. Thelen in the Thelen–Mitchell Enterprises entity.

CRW was incorporated in February 1992. The name refers to the Cedar Rapids West Bonanza Family Restaurant previously owned and operated by Family Restaurants, Inc. John A. Thelen was president, vice president, secretary-treasurer, and sole shareholder of CRW. CRW was incorporated while the Mitchells were still the principal owners and officers of Family Restaurants, Inc.

Shortly after Thelan–Mitchell Enterprises terminated Family Restaurants, Inc.'s lease on the premises housing the West restaurant, the partnership leased the premises to CRW for the purpose of operating the West restaurant.

Contrary to CRW's contention, we think a factfinder could reasonably infer from this evidence that a close relationship existed among Family Restaurants, Inc., the owners and officers of Family Restaurants, Inc., and the owner of CRW. From this close relationship a factfinder also could reasonably infer that CRW through its sole officer and shareholder, John A. Thelen, had notice of Bennett's civil rights complaint. We therefore conclude a genuine issue of material fact exists on the element of notice.

■ **B. Inability of Family Restaurants, Inc. to provide relief.** It is undisputed that Bennett did not have the opportunity to litigate against CRW the issue of Family Restaurants, Inc.'s inability to pay the damages awarded him. This is because CRW did not take over the operation of the Cedar Rapids West Bonanza Family Restaurant until after the commission's decision. From this, we conclude a genuine issue of material

fact exists on the element of Family Restaurants, Inc.'s inability to provide relief.

■ **C. Substantial continuity.** There is evidence that CRW hired forty-six out of sixty-five employees who had worked for the Cedar Rapids West Bonanza Family Restaurant. This represents approximately seventy-one percent of the work force. In addition, CRW operated the restaurant in the same fashion as Family Restaurants, Inc. had when the restaurant was known as the Cedar Rapids West Bonanza Family Restaurant, using the same equipment in the same location. As mentioned, the name—Cedar Rapids West—remained the same. Viewing this evidence in the light most favorable to Bennett, we conclude there is a genuine issue of material fact on the substantial continuity of business element.

## VI. Disposition.

In summary, we conclude as a matter of law that Bennett's claim of successor liability against MC is barred under the principles of res judicata. The district court correctly granted MC's summary judgment motion on this issue and correctly denied Bennett's motion.

There are genuine issues of material fact on Bennett's successor liability claim against CRW, which preclude summary judgment under the principles of res judicata. The district court was correct in so deciding and in denying CRW's motion for summary judgment on this claim.

Accordingly, we affirm on both the appeal and cross-appeal. We remand for further proceedings.

**AFFIRMED ON APPEAL AND CROSS–APPEAL; REMANDED.**