# IN THE COURT OF APPEALS OF IOWA

No. 22-1917
Filed December 20, 2023

**INTERSTATE POWER & LIGHT COMPANY.,**
        Plaintiff-Appellee,

**vs.**

**JOSEPH MOYER,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald,

Judge.

An injured worker appeals the judicial review order finding that res judicata

barred his review-reopening claims. **DISTRICT COURT DECISION REVERSED;**

**AGENCY DECISION AFFIRMED.**

Mark J. Sullivan and Zeke R. McCartney of Reynolds & Kenline, L.L.P.,

Dubuque, for appellant.

James M. Peters of Simmons Perrine Moyer Bergman, P.C., Cedar Rapids,

for appellee.

Considered by Tabor, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**TABOR, Presiding Judge.**

Joseph Moyer suffered a crush injury to his right foot while working as a lineman for Interstate Power and Light Company in 2012.[1] He received an award of permanent partial disability benefits from the Iowa Workers' Compensation Commission in 2017. Three years later, Moyer petitioned for review-reopening of that award under Iowa Code sections 85.26 and 86.14 (2020). The agency granted him permanent total disability benefits for the work injury. But Interstate successfully argued on judicial review that the doctrine of res judicata barred Moyer's review-reopening claims. Moyer appeals that judicial review order.

After the district court issued its decision, our supreme court clarified the limited application of res judicata principles to review-reopening challenges. *See Green v. N. Cent. Iowa Reg'l Solid Waste Auth.*, 989 N.W.2d 144, 148 (Iowa 2023). Because *Green* dictates a different result, we reverse the judicial review order. We also find that substantial evidence supports the award of permanent total disability benefits in the review-reopening proceedings.

I.      **Facts and Prior Proceedings**

As part of a three-man crew, Moyer was working on a boom truck when a coworker lowered the outriggers designed to support the truck. One of the outriggers landed on Moyer's right foot. The coworkers rushed Moyer to the emergency room where x-rays revealed crush fractures to his second, third, fourth, and fifth toes. But the great toe and other foot bones were spared. Doctors

---

[1] Interstate Power and Light Company (Interstate) is a subsidiary of Alliant Energy Corporation. Much of the administrative record refers to Moyer's employer as Alliant. On appeal, we will refer to the employer as Interstate to align with the parties' briefing.

prescribed painkillers, crutches, and physical therapy. Interstate stipulated to the work-related injury.

Moyer was restricted to light duty for about two months. When he returned to regular duties, he experienced significant pain and swelling in his foot. He received treatment from a foot and ankle specialist Phinit Phisitkul through the fall of 2012. In early 2013, Moyer sought chiropractic care for soreness in his right low back, hip, and knee that he attributed to changes in his gait to accommodate his right-foot pain. Moyer renewed his appointments with Dr. Phisitkul in August 2013. Dr. Phisitkul diagnosed Moyer with "interdigital neuritis at the second and third web spaces, related to the crushing [i]njury, and contracture of the gastrocnemius tendon." The doctor ordered physical therapy for Moyer's calf muscles, prescribed a night splint and insole, and limited Moyer's work hours. When Moyer didn't improve, Dr. Phisitkul performed surgery to remove a swollen and enlarged nerve between his second and third toes. But the surgery did not provide lasting relief. Meanwhile, Moyer started in a new position with Interstate that was less physically demanding. In 2014, Moyer had a second foot surgery that resulted in a slight improvement in his nerve pain.

According to three doctors, Moyer reached maximum medical improvement in August 2015. Dr. Phisitkul believed that Moyer sustained permanent impairment of "6 percent right foot or 4 percent right lower extremity." Dr. Robin Sassman set Moyer's permanent impairment at eleven percent "whole person" due to his ongoing pain. Dr. Erin Kennedy found that Moyer had permanent impairment of fifteen percent to the lower extremity based on damage to Moyer's peripheral nervous system. The deputy commissioner adopted Dr. Kennedy's view and

awarded Moyer thirty-three weeks of permanent partial disability benefits in a March 2017 arbitration decision. Both the commissioner and the district court affirmed the award. Neither side appealed that judicial review order.

Moyer continued to endure foot pain, as well as hip, knee, and back soreness from 2017 through 2020. For relief, he continued to undergo chiropractic adjustments and physical therapy—as well as more invasive treatments. For instance, Dr. Rahul Rastogi performed a peripheral nerve block procedure at the University of Iowa Hospitals and Clinics in November 2017. Beyond that, in June 2018, Dr. Rastogi implanted a lumbar neurostimulator, which did not alleviate the burning pain that Moyer was experiencing in his right foot. In February 2019, Dr. John Femino performed a gastrocnemius release on Moyer's calf. Any improvement after that procedure was short-lived. Just two months later, Moyer complained of low back pain and hip pain to Dr. Rastogi. Dr. Rastogi documented those complaints were new and that "[t]here is a focal point of tenderness on the lateral aspect of his hip, and he feels that he has weakness now on the right leg" and low back pain radiating into his buttocks.

Moyer also sought a mental-health evaluation in 2018. Moyer reported irritability, social withdrawal, low frustration tolerance, a loss of interest and pleasure, some feelings of helplessness, fatigue, trouble concentrating, occasional passive fleeting suicidal ideation, and anxiety about treatment options for his foot pain. Dr. Katherine Hadlandsmyth diagnosed Moyer as suffering from pain disorder with psychological factors, including major depressive disorder, stemming from his right foot injury.

Psychiatrist Terrence Augspurger and psychologist Amy Mooney conducted independent evaluations for Interstate. They agreed that Moyer was suffering from major depression but did not endorse a causal relationship with his work injury. Moyer attended psychotherapy during 2018 and met with psychiatrist Mark Mittauer for medication management through 2020. Dr. Mittauer disagreed with the opinions from the employer's experts, noting that scientific literature provides that "chronic pain can cause or exacerbate major depressive disorders and that major depressive disorders can also exacerbate pain."

In January 2020, Moyer petitioned for review-reopening of his award, asserting that since the arbitration decision he had changes of condition to his right foot, right knee, right hip, low back, and mental health. At a hearing in January 2021, Interstate argued that Moyer's claims were barred by res judicata. The employer also asserted that the evidence did not support a change in Moyer's physical or mental condition that left him permanently and totally disabled. The deputy commissioner rejected Interstate's res judicata claims. She also found that Moyer established a change of physical and mental condition warranting new compensation benefits. The deputy commissioner found that Moyer was permanently and totally disabled, awarding benefits from the date of the review-reopening petition. The commissioner affirmed those findings. [2]

---

[2] Because the commissioner adopted the deputy commissioner's arbitration ruling, we refer to the two decisions collectively as the commissioner's ruling. *See Schutjer v. Algona Manor Care Ctr.*, 780 N.W.2d 549, 556 n.2 (Iowa 2010) (following same method for referencing two agency decisions).

Interstate petitioned for judicial review. The employer alleged that the commission's decision was erroneous because it failed to bar Moyer's review-reopening claims for permanent back, hip, and mental-health conditions "under principles of res judicata/claim preclusion/issue preclusion." It also argued that the commission was wrong in finding that Moyer established a change in condition reflecting (1) "permanent low back, right hip and mental conditions causally related to his injury"; and (2) that he "has lost all earning capacity entitling him to lifetime weekly benefits." The district court ruled that Moyer's review-reopening claims were barred by "res judicata, claim preclusion, and/or issue preclusion." The court did not reach Interstate's other arguments. Moyer appeals.

## II. Scope and Standards of Review

In workers' compensation cases, the district court serves as an appellate court correcting any legal error by the commissioner. *See Grundmeyer v. Weyerhaeuser Co.*, 649 N.W.2d 744, 748 (Iowa 2002). And in reviewing the district court's ruling, we apply the standards in Iowa Code chapter 17A (2022) (the Iowa Administrative Procedure Act) to decide whether we reach the same result as that court. *Clark v. Vicorp Rests. Inc.*, 696 N.W.2d 596, 603 (Iowa 2005).

But the standard of review varies depending on what aspect of the decision is challenged. *See Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–56 (Iowa 2012). Under section 17A.19(10), we must "reverse, modify, or grant other appropriate relief" if we decide the award of benefits "is not supported by substantial evidence" or is otherwise irrational, illogical, or an unjustifiable application of law to fact. *See* Iowa Code § 17A.19(10)(f), (h), (i), (m). "Substantial evidence" means the quantity and quality of evidence a reasonable person would

find sufficient to establish the fact at issue. *Id.* § 17A.19(10)(f)(1). And even though another fact finder might draw a different conclusion from the evidence does not mean it is insubstantial. *Cedar Rapids Cmty. Sch. Dist. v. Pease,* 807 N.W.2d 839, 845 (Iowa 2011). In reviewing an agency's interpretation of a statute, we apply a correction-of-errors-at-law standard. Iowa Code § 17A.19(10)(*c*); *Green*, 989 N.W.2d at 147.

### III. Analysis

An award of workers' compensation benefits may be reviewed upon commencement of reopening proceedings within three years from the date of the last payment of weekly benefits. Iowa Code § 85.26(2) (2020). The question is whether the employee's condition warrants a change in compensation. *See id.* § 86.14(2). To justify his increase in compensation benefits, Moyer bears the burden to prove by a preponderance of the evidence that, after the date of the award under review, he suffered an impairment or lessening of earning capacity caused by the original injury. *Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1999).

### A. Does res judicata bar Moyer's review-reopening claims?

Moyer first argues the district court erred in rejecting his review-reopening petition based on res judicata.[3] In urging that defense—both in the district court and in this appeal—Interstate has relied on the agency appeal decision in *Green v. North Central Iowa Regional Solid Waste Agency*, File Number: 5042527, 2020 WL 599656 (Iowa Workers' Comp. Comm'n Jan. 16, 2020). The commissioner

---

[3] "Res judicata is a generic term that includes claim preclusion and issue preclusion." *Bennett v. MC No. 619, Inc.*, 586 N.W.2d 512, 516 (Iowa 1998).

granted the employer's motion for summary judgment, holding that a review-reopening proceeding "was not an invitation to claimant to take a 'second bite at the apple' regarding issues that have already been litigated and decided." *Id.* at *4 (citing *Kohlhaas v. Hog Slat, Inc.*, 777 N.W.2d 387, 393 (2009), for proposition that "the principles of res judicata still apply" to review-reopening claims).

But the agency decision in *Green* was reversed on appeal. The district court, court of appeals, and supreme court all rejected the employer's res judicata defense. The supreme court noted that the review-reopening statute presupposes a potential change in condition (including from temporary to permanent) and that change may still be causally related to a work injury. *Green*, 989 N.W.2d at 148. The court found that the employer read "too broadly our discussion in *Kohlhaas* of res judicata principles in review-reopening cases." *Id.* The court explained that res judicata in review-reopening proceedings most often applies to "original issues such as work-connection, employee or employer status, occurrence of a compensable accident, and degree of disability at the time of the first award." *Id.* (citation omitted).

As in *Green*, the employer here is not invoking res judicata to bar such foundational issues. Instead, Interstate contends that Moyer already litigated his entitlement to permanent disability benefits "based on a sequela condition of his hip or back" and lost.[4] In response, Moyer highlights this passage from the original arbitration decision: "Claimant credibly testified he continued to suffer with

---

[4] "The workers' compensation commission has defined 'sequela' as 'an after effect or secondary effect of an injury.'" *Huffey v. Second Inj. Fund of Iowa*, No. 18-2055, 2020 WL 1548490, at *1 n.1 (Iowa Ct. App. Apr. 1, 2020) (citation omitted).

symptoms of his right hip and low back. The evidentiary record demonstrates these symptoms are causally related to the stipulated work-related injury of March 20, 2012." As Moyer argues, because he proved causation, the commissioner awarded ongoing medical treatment for his right hip and low back. But at the time of the original award, the agency decided that Moyer had not yet proven that those conditions were permanent. Moyer presented proof of that change in his condition at the review-reopening proceedings. As the supreme court clarified, a prior judgment will not bind a party in a later action unless the issue has been "actually litigated." *Id.* at 149. The effect of Moyer's work injury on his current condition has not yet been litigated. *See id.*

The district court did not have the benefit of the supreme court's analysis in *Green*. That analysis makes clear that res judicata does not bar the issues raised in Moyer's review-reopening petition. With the clarification in *Green*, we must reverse the judicial review ruling that found Moyer had litigated "an identical issue" in the original compensation proceedings.

**B. Is the compensation award supported by substantial evidence?**

The parties disagree about what comes next. As its fallback, Interstate contends we should remand for the district court to decide the other issues raised on judicial review. Those issues are (1) whether there was a substantial change in Moyer's physical condition, (2) whether his mental-health condition caused any permanent disability and (3) whether he was permanently totally disabled. On the other hand, Moyer asks us to overturn the judicial review ruling, find substantial evidence to support the commissioner's findings, and reinstate the award. Because we review under the same standard as the district court, *Wieslander v.*

*Iowa Department of Transportation*, 596 N.W.2d 516, 520 (Iowa 1999), and the parties have briefed the remaining issues, we conclude that it is in the interest of sound judicial administration to decide those issues here. *See Barnes v. Iowa Dept. of Transp., Motor Veh. Div.*, 385 N.W.2d 260, 263 (Iowa 1986).

Before tackling those questions, we note our deferential review. "The administrative process presupposes judgment calls are to be left to the agency. Nearly all disputes are won or lost there." *Sellers v. Emp't Appeal Bd.*, 531 N.W.2d 645, 646 (Iowa Ct.App.1995) (internal citation omitted). The agency decided that Moyer proved physical and mental changes, stemming from his work injury, after the original arbitration decision. As a result of those changes, he is now entitled to permanent total disability benefits from the employer. We must decide whether substantial evidence supports that judgment call by the agency.

## 1. Did Moyer prove a change in his physical condition?

Moyer asserts that he demonstrated a change in his physical condition meriting review-reopening benefits. At the review-reopening hearing, Moyer testified to worsened pain on the bottom of his right foot, shooting pain in his right hip, and pain in his low back now radiating to his right buttock. The commissioner found him to be a credible witness. The commissioner also relied on a second round of functional capacity evaluations. Those evaluations showed a change in Moyer's functional status from performing at a medium physical demand level to being restricted to the upper end of light work.

In response, Interstate argues that "in carefully reviewing all the pain complaints and reports of his physical capabilities he has made over the years and already testified about in 2016, there was not a *substantial* change that supports

awarding him lifetime benefits." But Interstate cites nothing to back its argument that the change must be substantial. And neither the review-reopening statutes nor case law interpreting them include that qualifier.

It's under Iowa Code section 17A.19(10)(f)(3) that we assess whether *substantial evidence* supports the agency decision. We "consider the credibility determination by the presiding officer who had a chance to observe the demeanor of the witnesses." *Staff Mgmt. v. Jimenez,* 839 N.W.2d 640, 654 (Iowa 2013). As the trier of fact, it is the agency's role to "determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). We cannot reweigh the evidence to undermine the agency's findings. *Id.* The record contains substantial evidence to back the agency's decision that Moyer showed a change in his physical condition since the original award.

**2. Did Moyer prove that his mental health caused a permanent disability?**

Beyond his change in physical condition, Moyer contends he is entitled to review-reopening benefits because he developed a permanent sequela mental-health injury after the arbitration hearing. In 2018, Dr. Hadlandsmyth diagnosed him with untreated depression related to his persistent foot pain. Dr. Mittauer agreed with the depression diagnosis and its relation to Moyer's work injury. In 2020, Dr. Augspurger and Dr. Mooney reevaluated Moyer and changed their previous opinions. They decided that even if his work injury was not the sole cause of his mental health decline, it was a "substantial contributing factor." They also agreed with Dr. Mittauer's recommended work restrictions to accommodate Moyer's mental-health impairment.

To counter, Interstate returns to its res judicata argument, insisting "there is no evidence that the mental health condition developed after the arbitration hearing—or was unknowable to [Moyer]." The employer does not address the changed opinion of its own experts on Moyer's work restrictions due to his worsening mental health.

As the commissioner found, Moyer did not complain of depression or seek treatment before Dr. Hadlandsmyth's evaluation. Only when questioned by the psychologist did Moyer acknowledge symptoms of a depressive disorder. Moyer did not connect his feelings to a psychological condition caused by the work injury before he met with Dr. Hadlandsmyth. On this record, Interstate's argument fails. *Cf. Herrera v. IBP, Inc.*, 633 N.W.2d 284, 288–89 (Iowa 2001) (under discovery rule, claimant must be aware of seriousness of condition and impact on employment).

In finding Moyer suffered a permanent and total disability, the agency decided it "would reach this same conclusion even in the absence of the worsening of his physical symptoms, based on his mental health sequela alone." The record contains ample evidence to support that conclusion.

### 3. Did Moyer show that he was permanently and totally disabled?

What do the changes to Moyer's physical and mental condition mean for his ability to work? Moyer points to several factors supporting the award of permanent and total disability. First, he is fifty-three years old, and has "significant physical and mental disabilities" limiting the possibility of retraining. Second, he has "just a high school diploma, in an age when at least some college education is usually required for jobs that pay the kind of money Moyer earned in his full-time

employment at Interstate." And third, his primary work experience has been as a laborer with high physical demands, which he can no longer handle.

The commissioner cited Barbara Laughlin, a vocational expert for Moyer, who found that he "sustained between a 93 to 100 percent occupational loss and is not employable given his restrictions."[5] The commissioner agreed that Moyer could not be gainfully employed. Substantial evidence supports that decision. *See IBP, Inc. v. Al-Gharib*, 604 N.W.2d 621, 633 (Iowa 2000) ("Total disability does not mean a state of absolute helplessness.").

**DISTRICT COURT DECISION REVERSED; AGENCY DECISION AFFIRMED.**

---

[5] Interstate's vocational expert, Caitlin Smyth, asserted that Moyer was employable as a customer service representative or a front desk clerk. But the commissioner did not find that opinion persuasive because Smyth did not address Moyer's depressive disorder that causes him to be irritable and unable to concentrate.