**STATE of Iowa, Plaintiff–Appellee,**

v.

**Andre CORBETT, Defendant–Appellant.**

**No. 07–1666.**

Court of Appeals of Iowa.

Sept. 17, 2008.

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Harold Denton, County Attorney, and Susan Nehring, Assistant County Attorney, for appellee.

Considered by HUITINK, P.J., and VOGEL and EISENHAUER, JJ.

VOGEL, J.

Andre Corbett appeals from his conviction for possession of marijuana. Corbett asserts that the district court erred in denying his motion to suppress. Because we agree with the district court that the stop and brief detention of Corbett was supported by reasonable suspicion, we affirm.

## I. Background Facts and Proceedings

On September 20, 2006, the Cedar Rapids Police Department received an anonymous call that there was narcotics activity at an apartment building located at 1407 Third Avenue, SE. Officer Scott Syverson, who has been employed with the Cedar Rapids Police Department for twenty-seven years and has patrolled this area for the last ten to twelve years, responded to the call. He testified that he was familiar with this particular building because the police department had previously received complaints of narcotics activity taking place in the basement and on the first floor of the building and had been requested to "periodically check those areas and that building to see if we could catch anybody . . . or at least keep people away from there." As recently as a week or two before Corbett's arrest, Officer Syverson had discovered evidence of narcotics use in the form of drug paraphernalia left at the building.

As Officer Syverson approached the building in his patrol car, he observed a group of approximately ten people behind the building. He recognized one person as a man he had previously arrested for a narcotics incident. While remaining out of sight, he requested assisting police officer units. Once the other officers arrived in the area, Officer Syverson pulled into the driveway, but did not activate his lights or sirens. Immediately, the group of people began walking away. Officer Syverson exited his car and ordered the individuals to stop. Four members of the group began to run away. The individuals who came back to the parking lot included Corbett. They were directed by the officers to take a seat on the curb.

The officers explained to the group that they were investigating a narcotics complaint. At this time, Officer Syverson rec-ognized Corbett because Syverson had previously assisted the narcotics bureau with serving two search warrants on Corbett's home. When Officer Syverson asked Corbett for permission to search his person, Corbett consented. As a result of the search, crack cocaine and marijuana was found on Corbett's person.

Corbett filed a pretrial motion to suppress any evidence obtained as a result of the stop. The district court denied Corbett's motion, finding that the officer's stop of Corbett was supported by reasonable suspicion followed by Corbett's consent to the search of his person. After the district court's ruling, Corbett waived his right to a jury trial and stipulated to a trial on the minutes of evidence. He was found guilty of possession of marijuana pursuant to Iowa Code section 124.401(5) (2007) and possession of crack cocaine with intent to deliver pursuant to Iowa Code section 124.401(1)(c)(3). The district court granted Corbett's request to defer judgment on the crack cocaine conviction. Corbett was sentenced to sixty days in jail for the possession of marijuana conviction. Corbett appeals from the judgment imposed on his possession of marijuana conviction.

## II. Standard of Review

We review constitutional claims de novo. *State v. McGrane*, 733 N.W.2d 671, 675 (Iowa 2007). This review requires us to "make an independent evaluation of the totality of the circumstances as shown by the entire record." *State v. Simmons*, 714 N.W.2d 264, 271 (Iowa 2006). Due to the district court's opportunity to evaluate the credibility of the witnesses, we give deference to its factual findings, but are not bound by them. *Id.*

## III. Motion to Suppress

■ The Fourth Amendment to the United States Constitution and article I,

section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures. *See Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090 (1961) (stating the Fourth Amendment to the federal constitution is binding on the states through the Fourteenth Amendment to the federal constitution). The language of article I, section 8 of the Iowa Constitution is nearly identical to the language of the Fourth Amendment; therefore, we "usually deem the two provisions to be identical in scope, import, and purpose." *State v. Kreps*, 650 N.W.2d 636, 640–41 (Iowa 2002). Further, Corbett has not argued that there is a distinction between the federal and state constitutions; thus, our discussion will apply equally to both constitutions. *State v. Nitcher*, 720 N.W.2d 547, 553 (Iowa 2006).

■ Pursuant to the Fourth Amendment, an investigatory stop is a seizure and must be supported by reasonable suspicion that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 20–22, 88 S.Ct. 1868, 1879–81, 20 L.Ed.2d 889, 905–06 (1968); *Kreps*, 650 N.W.2d at 641–42. When determining whether a stop is supported by reasonable suspicion, "we must examine the 'totality of the circumstances' in every case to see if the officer conducting the search has a 'particularized and objective basis for suspecting legal wrongdoing.'" *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir.2005) (quoting *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740, 749 (2002)). "In forming a basis for suspicion, [an officer] may 'draw on [his] own experience and specialized training to make inferences from and deductions about the cumulative information available to [him] that might well elude an untrained person.'" *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir.2003) (quoting *Arvizu*,

534 U.S. at 273, 122 S.Ct. at 750–51, 151 L.Ed.2d at 749–50).

> When a person challenges a stop on the basis that reasonable suspicion did not exist, the State must show by a preponderance of the evidence that the stopping officer had specific and articulable facts, which taken together with rational inferences from those facts, to reasonably believe criminal activity may have occurred.

*State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004).

■ In the present case, Corbett asserts that his trial counsel was ineffective for failing to timely file a meritorious motion to suppress. Corbett's trial counsel filed a motion to suppress approximately 125 days after Corbett was arraigned. *See* Iowa R.Crim. P. 2.11 (requiring that a motion to suppress evidence be filed no later than forty days after arraignment). Although the State resisted the motion based upon the untimeliness, the district court proceeded to hear the motion and ruled on the merits. On appeal, the State does not raise the issue of whether the motion to suppress was time-barred, but rather contends the district court properly denied Corbett's motion. *See* Iowa R.App. P. 6.14(1)(c) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue."). Therefore, we will address the merits of the district court's suppression ruling.

■ Corbett claims the officers did not have reasonable suspicion to make an investigatory stop. We disagree. The stop was made on more than an "inchoate and unparticularized suspicion or 'hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123–24, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 576 (2000) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909). The apartment building

was located in a high crime area and this specific apartment building had a recent history of illegal drug use on its premises. *See Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676, 145 L.Ed.2d at 576 ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). Additionally, an anonymous caller had alerted police officers to narcotics activity on the day in question. This phone call was corroborated by the officer's previous information and subsequent observations. *Florida v. J.L.*, 529 U.S. 266, 270–71, 120 S.Ct. 1375, 1378–79, 146 L.Ed.2d 254, 260–61 (2000) (finding that in order for an anonymous tip to rise to constitute reasonable suspicion, it must have indicia of reliability); *See State v. Walshire*, 634 N.W.2d 625, 630 (Iowa 2001) (holding that an anonymous call by a citizen informant that reported a drunk driver constituted reasonable suspicion where an officer verified the vehicle's description, license number, and general location).

Upon arriving at the apartment building, Officer Syverson recognized one of the people Corbett was with as an individual he had previously arrested for a narcotics activity. *See State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) (discussing that the defendant was spotted with a known drug dealer). Finally, once Corbett became aware of the officer's presence, he abruptly attempted to leave the scene. *See State v. Cline*, 617 N.W.2d 277, 283 (Iowa 2000), abrogated on other grounds by *State v. Turner*, 630 N.W.2d 601 (Iowa 2001) (finding that the defendant's attempt "to leave the scene without being detected" was a factor in a *Terry* analysis); *see also* 4 Wayne R. La Fave § 9.5(f), at 516 (4th ed.2004) (discussing that an individual's attempt to avoid officers by changing directions or fleeing at the sight of officers is a factor in a *Terry* analysis).

Although Corbett argues that he had a right to walk away from the officers, this argument is misplaced. If an officer approaches an individual without reasonable suspicion or probable cause, that "individual has a right to ignore the police and go about his business." *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676, 145 L.Ed.2d at 577 (citing *Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229, 236 (1983)). "[A]ny refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for [an investigatory stop]." *Id.* (quoting *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 2387, 115 L.Ed.2d 389, 400 (1991) (internal quotations omitted)). However, that was not the case here. Corbett attempted to leave the scene once he became aware of police presence and prior to being stopped by Officer Syverson. A change in an individual's activity or conduct because they become aware of police presence is not simply going about one's business. *See Bailey*, 417 F.3d at 877 (discussing the defendant's reaction to an approaching officer, which was that the defendant "turned in a manner that suggested he was attempting to conceal contraband"); *see also Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676, 145 L.Ed.2d at 577 (distinguishing between "going about one's business" and "unprovoked flight"). Thus, a defendant's reaction to police presence is a factor in a *Terry* analysis. *Bailey*, 417 F.3d at 877 (stating that "the parties' behavior when they become aware of police presence" is a factor in a *Terry* analysis) (citations omitted).

As noted above, we must consider the totality of the circumstances confronting the officer at the time the decision to stop an individual is made. *Kreps*, 650 N.W.2d at 642. We conclude that in combination, these cited factors gave Officer Syverson

reasonable suspicion to believe Corbett may be involved in illegal drug activity. *See Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676, 145 L.Ed.2d at 576 (finding the defendant's presence in an area of heavy narcotics trafficking and his unprovoked flight upon noticing the police supported reasonable suspicion to believe he may be involved in criminal activity); *State v. Cline*, 617 N.W.2d at 283 (holding the defendant's presence on property where drug dealing had occurred and her subsequent flight when police arrived supported reasonable suspicion to believe she may be involved in criminal activity). In light of Officer Syverson's experience as a police officer patrolling this neighborhood with both frequent and recent drug activity, it would have been "poor police work" had he chosen not to investigate these circumstances further. *Terry*, 392 U.S. at 23, 88 S.Ct. at 1881, 20 L.Ed.2d at 907 ("It would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further.").

An investigatory stop permits an officer to resolve an ambiguity, that is whether otherwise innocent conduct also suggests that criminal activity is afoot. *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 677, 145 L.Ed.2d at 577 (citing to the facts of *Terry*, 392 U.S. at 5–6, 88 S.Ct. at 1871–72, 20 L.Ed.2d at 896–97). This type of stop is minimally intrusive because it simply allows an officer to briefly investigate. *Wardlow*, 528 U.S. at 126, 120 S.Ct. at 677, 145 L.Ed.2d at 577. That was the case here, as the officer simply stopped Corbett for a few minutes and asked for permission to search his person, to which Corbett consented. *See Brown v. Texas*, 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362 (1979) (stating that when determining whether an investigatory stop is valid, we weigh "the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty"); *Terry*, 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906 ("One general interest is of course that of effective crime prevention and detection[.]"). Thus, we affirm the district court's denial of Corbett's motion to suppress.

**AFFIRMED.**