# IN THE COURT OF APPEALS OF IOWA

No. 15-1546
Filed August 31, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**AARON LEWIS BOHL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Story County, Steven P. Van Marel, District Associate Judge.

        Defendant appeals his conviction for driving under revocation. **AFFIRMED**.

        Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

        Thomas J. Miller, Attorney General, and Richard J. Bennett, Assistant Attorney General, for appellee.

        Considered by Vogel, P.J., McDonald, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MCDONALD, Judge.**

Following a trial on the minutes, Aaron Bohl was convicted of driving under revocation in violation of Iowa Code section 321J.21 (2015). The issue on appeal is whether the district court erred in denying the defendant's motion to suppress evidence obtained by a traffic stop allegedly made in violation of the defendant's right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment is applicable to state actors by incorporation via the Fourteenth Amendment. *See Mapp v. Ohio*, 367 U.S. 643, 660 (1961). The touchstone of the Fourth Amendment is reasonableness. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1617 (2015) (Thomas, J. dissenting) (stating the text of the Fourth Amendment "indicates, and we have repeatedly confirmed, 'the ultimate touchstone of the Fourth Amendment is reasonableness'" (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006))); *State v. Kreps*, 650 N.W.2d 636, 640 (Iowa 2002). A traffic stop is a "seizure" within the meaning of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 809–10 (1996). A traffic stop is constitutionally reasonable when made "for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000); *State v. Kinkead*, 570

N.W.2d 97, 100 (Iowa 1997))*; see also Terry v. Ohio*, 392 U.S. 1, 20 (1968). The principal purpose of an investigatory stop is to "resolve the ambiguity as to whether criminal activity is afoot." *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993).

The text of article I, section 8 of the Iowa Constitution is materially indistinguishable from the federal constitutional provision. Nonetheless, "while United States Supreme Court cases are entitled to respectful consideration, [Iowa courts] will engage in independent analysis of the content of [Iowa's] search and seizure provisions." *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010). Depending upon the particular issue, our precedents interpreting article I, section 8 may provide greater or lesser protection than cases interpreting the Fourth Amendment. While it is undoubtedly true that "the Supreme Court's jurisprudence regarding the freedom from unreasonable searches and seizures under the Fourth Amendment" is a floor and not a ceiling due to the operation of the Supremacy Clause, *State v. Baldon*, 829 N.W.2d 785, 791 (Iowa 2013), it is also undoubtedly true that the maxim applies only where the defendant asserts a claim arising under the Fourth and Fourteenth Amendments.

> The right question, is not whether a state's guarantee is the same as or broader than its federal counterpart as interpreted by the Supreme Court. The right question is what the state's guarantee means and how it applies to the case at hand. The answer may turn out the same as it would under federal law. The state's law may prove to be more protective than federal law. The state law also may be less protective. In that case the court must go on to decide the claim under federal law, assuming it has been raised.

*Hulit v. State*, 982 S.W.2d 431, 437 n.11 (Tex. Crim. App. 1998) (quoting Hans A Linde, *E Pluribus—Constitutional Theory and State Courts*, 18 Ga. L. Rev. 165,

179 (1984)).  Where, as here, a "party raises issues under the Iowa Constitution and the Federal Constitution, but does not suggest a different standard be applied under the Iowa Constitution, we generally apply the federal standard." *State v. Edouard*, 854 N.W.2d 421, 452 (Iowa 2014) (Appel, J., concurring specially).

We review constitutional claims de novo.  *See Vance*, 790 N.W.2d at 780; *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004); *Kreps*, 650 N.W.2d at 640.  It is the State's burden to prove by a preponderance of the evidence the legality of the traffic stop.  *See Tague*, 676 N.W.2d at 204.  To determine if the traffic stop was constitutionally reasonable, we look to the "totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made."  *Kreps*, 650 N.W.2d at 642 (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).  This is an objective test.  *See id.* at 641–42 ("The circumstances under which the officer acted must be viewed 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C. Cir. 1976))).  A mere hunch will not suffice, but the officer may make the traffic stop based on "considerably less" evidence than that required to establish probable cause.  *See United States v. Soholow*, 490 U.S. 1, 8 (1989); *Kreps*, 650 N.W.2d at 642 ("The evidence justifying the stop need not rise to the level of probable cause.").  If the officer did not have reasonable suspicion to make the investigatory stop, then the stop violated the defendant's rights and "all evidence flowing from the stop is inadmissible."  *Tague*, 676 N.W.2d at 206.

At approximately one o'clock in the morning on June 27, 2015, an Iowa State University Police Department officer on routine patrol observed a vehicle pass by him. The officer testified the driver "looked at [the officer] in a manner which showed concern." The officer testified he observed a white male approximately twenty to thirty years of age driving the vehicle. As the officer followed the vehicle, the driver traveled under the speed limit in an area where people drive "typically very fast." The officer ran a report on the vehicle. The registered owner of the vehicle was John Bohl, now known to be the defendant's father, approximately sixty years of age. The officer did not believe the driver to be John Bohl because the driver he had observed was between twenty to thirty years of age. Dispatch reported the vehicle had been involved in an OWI-related incident in March 2015. Dispatch reported Aaron Bohl had his license revoked for refusing OWI testing while operating the vehicle at issue. Dispatch provided a description of Aaron Bohl, which matched the description of the driver the officer had observed. The officer testified, based on his experience, people in the area drove "vehicles registered to their parents while they're living away from home." The officer believed the driver to be Aaron Bohl and initiated a traffic stop of the vehicle. The driver was, in fact, Aaron Bohl, and he was, in fact, operating a motor vehicle while his driver's license was revoked.

On do novo review, we conclude the officer had reasonable suspicion to initiate the traffic stop—specifically, a reasonable suspicion the defendant was operating the observed vehicle while his driver's license was revoked. The officer observed the defendant act concerned and drive unusually slow upon seeing the marked patrol vehicle. Officers are able to consider the defendant's

behavior when determining if a stop would be reasonable. *See, e.g.*, *Richardson*, 501 N.W.2d at 497; *State v. Donnell*, 239 N.W.2d 575, 578 (Iowa 1976) (considering the defendant driving at a slow speed as one of several factors leading to reasonable suspicion); *State v. Corbett*, 758 N.W.2d 237, 241 (Iowa Ct. App. 2008) ("A change in an individual's activity or conduct because they become aware of police presence is not simply going about one's business" and therefore "a defendant's reaction to police presence is a factor in a *Terry* analysis."). The vehicle was registered to John Bohl, approximately sixty years of age, but the driver of the vehicle was twenty to thirty years of age and clearly not the registered owner. The defendant, who has the same last name as the registered owner, had his license revoked earlier in the year arising out of an OWI-related incident in the same vehicle. *See State v. Rendon*, No. A05-109, 2006 WL 278929, at *2 (Minn. Ct. App. Feb. 7, 2006) (noting reasonable assumption that family members may use each other's vehicles). The driver of the vehicle matched Aaron Bohl's description. *See State v. Moffit*, No. 12-1326, 2013 WL 3855691, at *2 (Iowa Ct. App. July 24, 2013) (concluding officers can rely on description provided by dispatch). Finally, in the officer's experience, it was not unusual for students to drive their parents' vehicles while attending university in Ames. *See Arvizu*, 534 U.S. at 273; *Corbett*, 758 N.W.2d at 240 (providing an officer is allowed to draw upon his or her past experience and training "'to make inferences from and deductions about the cumulative information available to [him or her] that might well elude an untrained person'" (quoting *United States v. Ameling*, 328 F.3d 443, 447 (8th Cir. 2003))). A reasonable officer could infer from the totality of these facts that Aaron Bohl was

operating the observed vehicle while his license was revoked. *See Vance*, 790 N.W.2d at 782 (prohibiting a stopping officer from relying on inferences of a driver's identity and requiring the officer to verify the identity of a driver would "seriously limit an officer's ability to investigate suspension [or revocation] violations" and would "not only place the stopping officer in danger but also the traveling public in general").

The district court did not err in denying the defendant's motion to suppress. His conviction is affirmed.

**AFFIRMED.**